THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.*
THE UNION CONSOLIDATED ELEVATED RAILWAY COM-
PANY, Appellee.

*Opinion filed April 23, 1914.*

1. QUO WARRANTO—*in Illinois leave to file information is es-
sential in all cases.* Neither by the Statute of Anne nor at common
law was it necessary for the Attorney General to obtain leave to
file an information in the nature of *quo warranto* where public
rights, alone, were involved, but under the Illinois Quo Warranto
act leave must be obtained in all cases where the remedy is by in-
formation in the nature of *quo warranto,* including those where
the Attorney General or State's attorney acts on his own accord.

2. SAME—*State officers must obtain leave to file information.*
The fact that the Attorney General or State's attorney must ob-
tain leave of court to file an information in the nature of *quo war-
ranto,* even where only the rights of the State are involved, does
not amount to an unlawful interference by the judicial department
with the executive department, as the requirement is statutory and
the judicial department cannot coerce such officers in the exercise
of their discretion as to instituting the proceeding.

3. SAME—*when petition for leave is insufficient.* The mere al-
legation in a petition for leave to file an information in the nature
of *quo warranto* that the respondent had issued stocks and bonds
to a given amount in excess of the consideration in money, labor
or property received is not, alone, sufficient to show probable cause
for granting leave to file the information.

4. SAME—*what petition for leave must show.* A petition for
leave to file an information in the nature of *quo warranto* must
recite facts sufficient to satisfy the court or the judge that there
is probable ground for the proceeding, and it is not sufficient to
refer to the allegations of the information, which is made a part
of the petition, where the information is merely in the general
terms of informations in such cases.

5. RAILROADS—*a railroad corporation can issue stocks or bonds
only for the value.* The constitutional and statutory prohibition
against the issuing by railroad corporations of stocks or bonds ex-
cept for money, labor or property actually received, and against
the fictitious increase of stock or indebtedness, not only prohibits
the corporation from issuing stocks or bonds without any consid-
eration whatever, but also prohibits such a fraudulent issue of
stocks or bonds, in excess of the consideration received as would

make the over-issue a fraud in fact or in law, but the over-issue, to be unlawful, must be made with a fraudulent intent, or it must be so in excess of the reasonable value of the property received for the stocks or bonds that the law would imply fraud.

6. SAME—*what does not render an issue of stocks and bonds fraudulent.* It is not a violation of the constitution and statute for a railroad corporation to issue and sell its stocks and bonds to raise money to build its road, and the fact that the aggregate of the stocks and bonds issued for that purpose exceeds the actual cost of construction does not necessarily render the act of issuing the stocks and bonds *ultra vires* and fraudulent.

7. SAME—*railroad company cannot defeat State's right to regulate rates by issuing bonds or stocks in excess of value.* While the right retained by the State to regulate rates charged by railroads does not authorize it to fix such rates so low as to deprive a railroad company of a reasonable return on its investment, yet the company cannot, under the constitution, defeat the State's right to regulate rates by issuing stocks and bonds greatly in excess of the substantial value of the property.

8. SAME—*what will amount to an over-issue where there is no proof of fraud in fact.* To constitute an issue of stocks or bonds in excess of the consideration received fraudulent, where there is no proof of fraud in fact, the over-issue must be so in excess of the labor, money or property received as to preclude any presumption of good faith.

APPEAL from the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding.

P. J. LUCEY, Attorney General, and MACLAY HOYNE, State's Attorney, (LESTER H. STRAWN, GLENN E. PLUMB, and DONALD R. RICHBERG, of counsel,) for the People.

ISHAM, LINCOLN & BEALE, and HERRICK, ALLEN & MARTIN, (JOHN J. HERRICK, and GILBERT E. PORTER, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

The State's attorney of Cook county presented to one of the judges of the circuit court an information in the nature of *quo warranto* against the Union Consolidated

263 — 3

Elevated Railway Company, together with a petition for leave to file the same. Leave was granted and the information filed. Afterwards respondent filed a motion to set aside the order granting leave to file the information and to strike the information from the files and abate the proceedings. A hearing was had on the motion and an order entered vacating and setting aside the leave granted to file the information and dismissing the petition. The order recites it is made without prejudice to the right of the State's attorney, at any time thereafter, to present a petition for leave to file another information in the nature of *quo warranto* against the respondent company. From the order vacating the leave to file and dismissing the information this appeal is prosecuted.

A copy of the information was attached to and made a part of the petition. The petition merely referred to the information for the grounds relied upon as showing probable cause for granting leave to file the same. The information alleges that the Union Consolidated Elevated Railway Company (hereafter referred to as appellee) was incorporated in 1896 under the statutes of Illinois for the incorporation of railroad companies. (Hurd's Stat. 1911, chap. 114.) The information then sets out section 13 of article 11 of the constitution of Illinois, which reads as follows: "No railroad corporation shall issue any stock or bonds, except for money, labor or property actually received, and applied to the purposes for which such corporation was created; and all stock dividends, and other fictitious increase of the capital stock or indebtedness of any such corporation, shall be void." It also set out section 22 of the Railroad Corporation act, which is substantially identical with the constitutional provision quoted. The information alleges that appellee has issued and outstanding 10,000 shares of capital stock of the par value of $100 each, making a total capital stock issued and outstanding of $1,000,000; that it has issued and has outstanding bonds of the par

value of $407,000, making a total issue of capital stock and indebtedness of $1,407,000; that the amount of the capital stock and indebtedness of appellee exceeds the amount of money, labor or property received by it and applied to the purposes for which it was created by the sum of $1,000,000. The information further alleges that appellee, in the issuance of capital stock, bonds and other evidences of indebtedness in excess of the amount received by it in money, labor or property and applied to the purposes for which it was created, has exercised, and still does exercise, without warrant, charter or grant and in violation of the constitution and statute and the provisions of its charter, a privilege and franchise which it has usurped, and still does usurp, to the damage and prejudice of the people and against the peace and dignity of the same. The petition, after referring to and making the information a part thereof, alleged the State's attorney had reason to believe that the allegations in the information could be established by proof, and therefore asked leave to file the same.

Appellant contends (1) that where only public questions are involved and no private rights are to be adjudicated the State's attorney or Attorney General has a right to file an information in the nature of *quo warranto* in his own discretion, without first obtaining leave of the court; and (2) that if he has not such right, the petition in this case is sufficient to show probable ground for the proceeding; that it alleges acts that were *ultra vires* the corporation and it is not necessary to allege that such acts were fraudulent, but that even if fraud is a necessary element, the petition sufficiently states a case of constructive fraud when it alleges that the issue of $1,407,000 in stocks and bonds was $1,000,000 in excess of the amount of money and the value of the labor and property actually received.

Appellee contends (1) that under our statute no information in the nature of *quo warranto* can be filed except by leave of court, based upon a petition showing prob-

able ground for the proceeding; (2) that the allegations of the petition and information do not show a violation of the constitution and statute nor that there was probable ground for the proceeding; and (3) that the law requires the stock or bonds of a corporation to be issued for money, labor or property, and that the amount to be issued in consideration of the money, labor or property received is vested in the officers of the corporation who exercise its corporate powers.

Originally in England the writ of *quo warranto* was a writ of right for the crown, but this writ fell into disuse and was displaced by the practice of filing an information in the nature of *quo warranto*. Both the writ and the information were exclusive prerogative remedies to redress encroachments upon the crown and could only be availed of at the instance of the crown. By the Statute of Anne informations were authorized to be filed, by leave of court, at the relation of a private person as a means for determining civil rights between parties. Neither that statute nor the common law required the Attorney General to obtain leave to file an information where only public rights were involved. (*Attorney General* v. *Sullivan*, 163 Mass. 446; *People* v. *Rensselaer and Saratoga Railroad Co.* 15 Wend. 113; 30 Am. Dec. 33, where will be found an elaborate note; *Haupt* v. *Rogers*, 170 Mass. 71; *Commonwealth* v. *Walter*, 83 Pa. St. 105; 24 Am. Rep. 154; *State of Minnesota* v. *Village of Kent*, 1 L. R. A. [N. S.] 826; 23 Am. & Eng. Ency. of Law, 597-602; 32 Cyc. 1436.) The common law still prevails except where changed by statute, and the decision of this question depends upon our statute on the subject of *quo warranto*. (Hurd's Stat. 1911, chap. 112.) So far as we are advised this question has never been directly presented for decision in this State.

Section 1 of our Quo Warranto act provides: "That in case any person shall usurp, intrude into, or unlawfully hold or execute any office or franchise, or any office in any

corporation created by authority of this State, * * * or
any public officer shall have done or suffered any act which,
by the provisions of law, works a forfeiture of his office,
or any association or number of persons shall act within
this State as a corporation without being legally incorpo-
rated, or any corporation does or omits any act which
amounts to a surrender or forfeiture of its rights and
privileges as a corporation, or exercises powers not con-
ferred by law, * * * the Attorney General or State's
attorney of the proper county, either of his own accord or
at the instance of any individual relator, may present a
petition to any court of record of competent jurisdiction,
or any judge thereof in vacation, for leave to file an in-
formation in the nature of a *quo warranto* in the name of
the People of the State of Illinois, and if such court or
judge shall be satisfied that there is probable ground for
the proceeding, the court or judge may grant the petition,
and order the information to be filed and process to issue."

The requirement that leave must be obtained to file the
information does not except cases where only public rights
are involved but applies to all cases, including those where
the State's attorney or Attorney General acts upon his own
accord as well as cases where he acts at the instance of an
individual relator. This statute abrogates the common law
rule and applies to all cases where the remedy is by infor-
mation in the nature of *quo warranto*.

It is contended that if the executive officers of the State
are required to secure leave of a court or judge to file an
information on behalf of the State where only the rights
of the State are involved, it would take from the executive
department powers conferred upon it by the constitution
and transfer them to the judicial department. We think this
a misapprehension. The judicial department cannot coerce
the executive department or its officers in the discharge of
executive duties, and could not compel the Attorney Gen-
eral or State's attorney to file an information on behalf of

the State where only the right of the State was involved.
Those officers have a discretion in instituting proceedings
in such cases not subject to be controlled by the judicial
department, but if they choose to exercise the discretion
in favor of instituting the proceedings, the statutory en-
actment that they must obtain leave upon a petition filed
for that purpose, in which probable ground for the pro-
ceedings is shown, is not an invasion of the executive de-
partment. The authority of the court to determine whether
there is probable ground for the proceedings is no more a
usurpation of the powers of the executive department than
is the authority of the court to pass upon and determine
the sufficiency of the information after it is filed.

The constitution and statute, in our opinion, not only
forbid the issue of stock and bonds where no money, labor
or property is received by the corporation for the purposes
for which it was organized, but also forbid a reckless, dis-
honest issue of stock and bonds in excess of the consid-
eration received. The direct question before us was not
involved in any of the cases cited in the briefs of the
respective parties but they were proceedings by creditors
against the corporation, in which the constitutional pro-
vision of this State or similar provisions in other States
were referred to and commented upon in the opinions
of the courts. In *Peoria and Springfield Railroad Co.*
v. *Thompson,* 103 Ill. 187, the constitutional provision as
applying to the facts in that case was before the court. In
that case the corporation sought to defeat its liability on
bonds issued by it, in a suit brought by bondholders who
were innocent purchasers, on the ground that they were
not issued for money, labor or property actually received.
The bonds were issued to the contractors for building the
railroad and a bridge across the Illinois river. The bridge
was built and about twelve miles of road completed when
the work ceased and was not afterwards resumed. The
right of way procured by the contractors at their own

expense, the bridge built and the road completed cost an amount nearly, if not quite, equal to the par value of the bonds. The case, though not exactly in point, is instructive. The court held it was not a violation of the constitution or statute for a railroad company to issue bonds for the purpose of raising funds to build the road or to accomplish other legitimate corporate purposes, and said: "The object [of the constitution] was doubtless to prevent reckless and unscrupulous speculators, under the guise or pretense of building a railroad or of accomplishing some other legitimate corporate purpose, from fraudulently issuing and putting upon the market bonds or stocks that do not and are not intended to represent money or property of any kind, either in possession or expectancy, the stock or bonds in such case being entirely fictitious." This construction of the constitution was not controlling in the decision of the case and may be considered *obiter,* but even so, the discussion is illuminating.

In *Memphis and Little Rock Railroad Co.* v. *Dow,* 120 U. S. 287, a bill was filed against the railroad company by bond-holding creditors to foreclose. The corporation defended upon the ground that under the constitution of Arkansas (substantially like ours) the bonds were void, having been issued without consideration in money, labor or property actually received. In addition to the answer the corporation filed a cross-bill alleging the full value of its property rights and privileges did not exceed the amount of its capital stock, $1,300,000, and that the bonds issued, aggregating $2,600,000, were issued without any consideration received in money, labor or property and represented a fictitious indebtedness. Exceptions to the answer and a demurrer to the cross-bill were sustained and a decree was rendered as prayed in the original bill. The court said the demurrer to the cross-bill admitted the allegation that the full value of the corporation's property did not exceed $1,300,000, the amount of its capital stock, and upon this

premise it was argued that the bond issue of $2,600,000 was without any consideration, represented a fictitious indebtedness and was void. The facts in that case were quite complicated, and we deem it unnecessary for the purposes of this opinion to set them out but will quote sufficiently from the opinion delivered to show the construction placed upon the constitution. The court said: "The prohibition against the issuing of stocks or bonds except for money or property actually received or labor done, and against the fictitious increase of stock or indebtedness, was intended to protect stockholders against spoliation and to guard the public against securities that were absolutely worthless. One of the mischiefs sought to be remedied is the flooding of the market with stock and bonds that do not represent anything whatever of substantial value. * * * It is not clear from the words used that the framers of that instrument intended to restrict private corporations,—at least when acting with the approval of their stockholders,—in the exchange of their stock or bonds for money, property or labor upon such terms as they deem proper, provided, always, the transaction is a real one, based upon a present consideration and having reference to legitimate corporate purposes, and is not a mere device to evade the law and accomplish that which is forbidden."

The court, in the case cited, held that under the facts alleged it could not be said the bonds secured by the mortgage sought to be foreclosed were issued without any consideration whatever actually received in property, but it did not hold that the constitution did not forbid the fraudulent over-issue of bonds or stock, and in our opinion the language of the constitution would not justify any such holding. The constitution was aimed not only to prohibit the corporation from issuing stock and bonds without any consideration whatever, but also to prohibit it from a fraudulent issue of stock or bonds in excess of the consideration received. Our constitution does not permit a cor-

poration, because it receives something of value, to issue stock and bonds known to be grossly in excess of the value received. If this could be done it would permit a corporation to do one of the things the Supreme Court of the United States and this court said was intended to be prohibited,—that is, issuing and placing upon the market stock and bonds representing nothing of substantial value. The mere fact, however, that the corporation issues stock or bonds in excess of the actual value of the property received does not necessarily render it fraudulent. Whether it was so depends upon a number of considerations and contingencies. In determining this question, if the proof showed that the property received was worth less than one-half the amount of the stock and bonds issued it would be a circumstance to be considered in determining the character of the transaction, but the presumption will not be indulged that because the stock and bonded indebtedness exceeded the money, labor and property received, the excess was issued for no money, labor or property or that it was fraudulently issued. We do not think it can be said the allegation of the petition that appellee had issued stock and bonds aggregating $1,407,000, and that this exceeded the amount of the money, labor and property actually received by the sum of $1,000,000, makes a *prima facie* case of actual or constructive fraud showing probable ground for the proceeding. It is not a violation of the constitution and statute for a railroad corporation to issue and sell its stock and bonds to raise money to build its road, and it does not follow because the aggregate of the stock and bonds issued for that purpose exceeds the actual cost of construction that the act of issuing the stock and bonds was *ultra vires* or fraudulent. The State retains the right to regulate rates charged by railroads, but it has not the power to fix tolls or charges at so low a rate as to destroy the investment or deprive the company of its right to a reasonable return on the investment. The constitution forbids the corporation

defeating the State's right to regulate its charges by over-capitalization or issuing stock or bonds in excess of the value, or substantial value, of its property, and basing its tolls or charges on such over-issue; but the over-issue must be made with fraudulent intent, or it must be so in excess of the reasonable value of the property received for the stock or bonds that the law would imply fraud.

In *Newcastle and Northern Railroad Co.* v. *Simpson,* 21 Fed. Rep. 533, which was not a *quo warranto* proceeding by the State, a provision of the Pennsylvania constitution like ours was before the court. In that case the corporation contracted for the expenditure of not exceeding $200,000 for work and materials, and paid for the same in paid-up shares of capital stock amounting to $300,-000 and mortgage bonds amounting to $300,000. The court said the constitutional provision prohibits the issue of stock and bonds by a corporation which does not in good faith represent a consideration in labor done or money or property received substantially corresponding in value with the face amount of the stock and bonds issued, and that it would be a strange miscarriage of the constitution if such an issue of watered stock as was there made should be sustained.

It is a matter of common knowledge that much fraud is perpetrated by corporations issuing stock and securities not based upon any substantial value, but there are corporations which endeavor, in good faith, to not over-capitalize or encumber their property, and it was not intended by the constitutional provision to make void the issue of stock and bonds in excess of the value of the property, money or labor received unless such over-issue was a fraud in fact or in law. It is not necessary here to determine to just what extent the over-issue must exceed the consideration received by the corporation to come within the prohibition, but evidently it must, in the absence of proof of fraud in fact, be so in excess of the money, labor or prop-

erty received as to preclude any presumption of good faith. That the value of the consideration received did not exceed one-third the par value of the stock and bonds issued might or might not render the transaction void, depending on circumstances and conditions susceptible of proof, and the mere allegation in a petition for leave to file an information that appellee had issued stock and bonds to the extent of $1,000,000 in excess of the consideration in money, labor or property received is not sufficient to show probable cause for granting leave to file the information. Where a consideration was received for the issue, as shown by the petition here, to authorize granting leave to file an information it must be made to appear that the over-issue was fraudulent. With the *facts* as to whether the issue of the stock and bonds by appellee was fraudulent and in violation of the constitutional and statutory provisions we have nothing to do.

It is contended by appellant that the allegations of the information may be of the most general character, and that it is sufficient to allege, generally, that the defendant is exercising powers not granted by its charter. However that may be, there must be a petition presented for leave to file the information, in which facts are recited sufficient to satisfy the court or judge that there is probable ground for the proceeding. The only grounds alleged in the petition are those alleged in the information, and if it was sufficient to refer by the petition to the allegations of the information for the grounds relied upon, and the information was in the general terms of informations in such cases, there would be no reason for the statutory enactment that before leave to file will be granted a petition must be presented sufficient to satisfy the court or judge that there is probable ground for the proceeding. The question for our decision is not the sufficiency of the information as a pleading where leave has been granted to file it, but whether the petition showed probable ground for granting the leave.

The circuit court held it did not,—that the leave was improvidently granted,—and set the order granting the leave aside and dismissed the proceeding. We think in this there was no error, and the judgment is affirmed.

*Judgment affirmed.*