THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* THE CITY OF CHICAGO *et al.* Appellees.

*Opinion filed October 27, 1915—Rehearing denied Dec. 10, 1915.*

1. QUO WARRANTO—*power of court to vacate an order granting leave to file an information.* Where, during the term at which an order granting leave to file an information in the nature of *quo warranto* is entered, a motion is made to vacate the order, the court has discretionary power to allow the motion and vacate the order upon a showing that the leave was inadvertently or improvidently allowed under a misapprehension of the facts or the law; and this is true though one judge of the court granted the leave and another heard the motion to vacate.

2. SAME—*effect of rule of superior court providing for a motion judge.* The existence of the rule of the superior court of Cook county providing for a motion judge on the law side of the court and the designation of a judge of that court as motion judge do not prevent any other judge of the court from passing upon any motion, where no objection is interposed and his action is taken with the consent of the parties, express or implied, and with the permission of the court.

3. SAME—*affidavits may be filed on motion to vacate leave.* On motion to vacate an order granting leave to file an information in the nature of *quo warranto,* affidavits may be filed for the purpose of bringing to the attention of the court any fact or facts necessary to enable the court, in connection with the petition, to determine whether there was probable cause for granting the leave.

4. MUNICIPAL CORPORATIONS—*a city may require unification of street railways.* A city has power to require the combination, union

or merger of the street railways within its jurisdiction, and the street railway companies have power to comply with such requirement by effecting a combination, union or merger of their properties for the joint operation of their lines under single management.

5. SAME—*Chicago unification ordinance and agreement of November 13, 1913, are valid.* The Chicago unification ordinance of November 13, 1913, and the operating agreement contained therein with the street railway companies of the city, do not amount to a transfer by the companies of their rights and franchises to individuals nor do they relieve said companies of any of their corporate powers, duties or responsibilities, but are merely intended to secure the operation of the street railways as one system under the management of a board, and are valid.

6. SAME—*Chicago Surface Lines Board of Operation is merely an agency.* The members of the Chicago Surface Lines Board of Operation are merely the agents or servants of the street railway companies appointing them and are employed for the purpose of managing the companies as one system, and the fact that they are given the absolute management of the details of the business does not amount to an assumption by them of corporate powers nor to a surrender of corporate powers by the street railway companies.

7. SAME—*term "Chicago Surface Lines" is merely a name— effect of suit in such name.* The term "Chicago Surface Lines" is merely a name used for convenience in the operating agreement of November 13, 1913, to designate the combined properties of the street railway lines in Chicago, and a suit brought against the Chicago Surface Lines is ineffective as against any of the companies to the operating agreement even though service may be had upon the proper officers of some one or more of the companies.

8. SAME—*what does not show that board is attempting to exercise privileges of corporation.* The fact that the Chicago Surface Lines Board of Operation, in a suit brought against it which should have been brought against one of the street railway companies, did not take advantage of the failure to name the proper party defendant but entered the appearance of the board, does not show that the board is attempting to exercise the privileges of a corporation.

APPEAL from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

P. J. LUCEY, Attorney General, and MACLAY HOYNE, State's Attorney, (GLENN E. PLUMB, of counsel,) for the People.

RICHARD S. FOLSOM, Corporation Counsel, (CHARLES M. HAFT, of counsel,) for appellee the city of Chicago.

HERRICK, ALLEN & MARTIN, and BUSBY, WEBER, MILLER & ROBINSON, (JOHN J. HERRICK, W. W. GURLEY, and HARRY P. WEBER, of counsel,) for other appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

The State's attorney of Cook county served notice upon the city of Chicago, the Chicago Railways Company, the Chicago City Railway Company, the Calumet and South Chicago Railway Company, the Southern Street Railway Company, certain individuals as officers of the Chicago Surface Lines Board of Operation, and certain individuals composing the said Chicago Surface Lines Board of Operation, that he would on January 16, 1915, present to Clarence N. Goodwin, one of the judges of the superior court of Cook county, his petition for leave to file an information in the nature of *quo warranto.* In accordance with this notice all parties appeared by counsel before Judge Goodwin at the time specified in the notice, and over the objection of the respondents leave was granted the State's attorney to file the information. On January 19 the respondents entered their appearance, and on January 25 Judge Brentano, as chief justice of the superior court, assigned the case to Judge Foell, one of the judges of the superior court, "for the purpose of hearing said cause, including hearing and determining any and all motions, demurrers, pleas or other matters which may properly be presented or filed in the said cause." On January 29 the respondents presented to Judge Foell their motion to set aside the order theretofore entered by Judge Goodwin granting leave to file the information. The hearing of the motion was set for February 24. On the date last mentioned Judge Foell re-assigned the case to Judge Brentano, who set the hearing for March 4 but on that date

continued the hearing to March 11. On March 11 a hearing was had before Judge Brentano, which resulted in the entry of an order on March 18 setting aside the order previously entered by Judge Goodwin granting leave to file the information, striking the information and petition from the files and dismissing the proceeding. From that order the People have prosecuted this appeal.

It is contended by appellant that Judge Brentano had no power to review and set aside the order theretofore entered by Judge Goodwin directing the information to be filed, as the discretion of the superior court was exhausted when leave was granted to file the information. This question has received the attention of the court in two recent cases. (*People* v. *Union Elevated Railway Co.* 263 Ill. 32; *People* v. *Darrough,* 266 id. 506.) The situation there was identical with that presented here, and it was held in those cases that the rule is well established in this State that during the term at which a judgment is entered the record remains in the breast of the court, and the court has the discretionary power, at any time during the term, to amend, vacate or set aside the judgment whenever it may deem such course necessary for the promotion of the ends of justice; and whenever it is made to appear to the court in any proceedings, including those in *quo warranto,* that leave to file an information has been inadvertently or improvidently granted or allowed under a misapprehension of the facts or the law, the court may, at any time during such term, vacate and set aside the order granting such leave and dismiss the proceedings. In this case the motion to vacate the order granting leave to file the information and to dismiss the proceedings was made during the term at which the leave was granted, and under the holding in the cases just referred to, the court had the discretionary power to pass upon the motion, and if it was found that the leave had been improvidently granted, to vacate and set aside the order.

In this connection it is also shown that at the time the petition was filed there was in force on the law side of the superior court a rule adopted by the judges of the court which provided that all motions of course and contested, except motions for new trial and motions subsequent thereto and motions arising during the actual trial of the case, should be determined and disposed of by one or more judges designated for that purpose, and that petitions for *quo warranto* were included within this rule. It is further shown that a resolution had been theretofore adopted by the judges of the superior court designating Judge. Goodwin as motion judge of the law division of the court for one year beginning September 21, 1914, and it is contended that it was error, in case the court had power to hear and determine the motion, to present the same for determination to any member of the superior court other than Judge Goodwin. The adoption of this rule and the designation of Judge Goodwin as motion judge did not deprive any other member of the superior court of the power to hear and determine any matter which could properly be presented to that court. The purpose of the adoption of such a rule was to expedite the business of the court and to serve the convenience of its members and the members of the bar practicing before it. The superior court has the power to enforce the rule, but the existence of the rule does not prevent any judge of the superior court from passing upon any motion, where no objection to him doing so is interposed and where the action is taken with the consent of the parties, express or implied, and the permission of the court. Judge Brentano was, at the time this matter was pending, chief justice of the superior court, with power to assign cases and matters for hearing to the various members of the court. When the motion to vacate was made and Judge Foell transferred the case back to the chief justice, it was within the power of Judge Brentano, if he saw fit, or if the parties objected

to him hearing the motion, to again assign the cause to Judge Goodwin. It appears that no objection was made to Judge Brentano hearing the motion, and he having heard and determined the matter, the order entered was the order of the superior court, and was just as effective as though it had been entered by Judge Goodwin or any other member of the court.

It is urged by appellant that the court erred in setting aside the order granting leave to file the information and in striking the information and petition from the files, because the petition, taken in connection with the affidavits presented to Judge Brentano by the respective parties, disclosed probable ground for the proceeding against the respondents.

The petition upon which Judge Goodwin granted leave to file the information alleged that prior to the first day of February, 1914, the Chicago Railways Company, the Chicago City Railway Company, the Calumet and South Chicago Railway Company and the Southern Street Railway Company, all corporations organized under the laws of this State, owned and operated certain lines of street railway in the city of Chicago under the provisions of their respective charters and certain ordinances of the city of Chicago, but that since the first day of February, 1914, the said corporations, and each of them, have wholly ceased and omitted to operate any of the railways theretofore so owned and operated by them; that since February 1, 1914, each and all of said street railways, constituting all of the street railways within the city of Chicago, have been operated by the Chicago Surface Lines Board of Operation and the officers of said board; that on November 13, 1913, the city council of the city of Chicago passed an ordinance purporting to authorize the said railway companies to execute a certain contract set forth in said ordinance, whereby each of said companies would become obligated to turn over to said board of operation and its officers the opera-

tion of its said railway, and the said board and its officers would become obligated to operate all of said street railways from and after the first day of February, 1914, until the first day of February, 1927, being the full period of the grant, by ordinance, of the right to operate said railways. The ordinance of November 13, 1913, was attached to the petition and by reference made a part thereof. The petition further alleged that each of the respondent corporations executed the contract set forth in the ordinance and accepted the said ordinance after having so executed the said contract, and did, on the first day of February, 1914, assign and transfer to the said board of operation, and the officers thereof, the complete and entire operation of their several street railways, and that since the first day of February, 1914, the said board of operation, and the officers thereof, have assumed complete control and operation of the said lines of street railway, and that since the first day of February, 1914, the individuals constituting said board of operation, and the individuals holding the official positions of said board, have operated, and are now operating, each of said street railways, and that each and every of the respondent corporations has since the first day of February, 1914, wholly failed and omitted to operate any of said street railways. After setting out certain provisions of the constitution and statutes of this State, the petition alleged that the city was without authority, under the powers granted it by the legislature, to make any grant, as was done by the ordinance of November 13, 1913, conferring upon the individuals composing the said board of operation, and the individuals constituting the officers of said board, the right to operate said street railways, and that said ordinance was and is therefore void and of no effect. It was further alleged that said railway companies have no power, under their charters or under the laws of this State, to assign or transfer the operation of their street railways to said board of operation or to the individuals

constituting the same, or to any of the officers of said
board or the individuals occupying such official positions,
and that the contract set forth in the ordinance of Novem-
ber 13, 1913, and executed by said companies, was and
is null and void and of no effect; that in the execution
of said contract the railway companies, and each of them,
were exercising powers not conferred by law, and that in
the assignment or transfer of the operation of their street
railways to the said board of operation and the individuals
composing the same, and to the officers of said board and
the individuals elected as such, the said corporations, and
each of them, were exercising powers not conferred by
law, and that each of said corporations in so assigning or
attempting to assign to said board and its officers the right
or privilege of operating said street railways has done and
permitted an act which amounts to a surrender or for-
feiture of its rights and privileges as a corporation; that
said board of operation and the individuals constituting the
same, and the officers of said board and the individuals
holding such official positions, are each and all of them
holding or claiming to hold and exercise a privilege, ex-
emption or license which has been improperly and without
warrant of law issued and granted by the city council of
the city of Chicago, and the said board of operation and
the individuals constituting the same, and the officers of
said board and the individuals holding such official posi-
tions, are now acting within this State as a corporation
without being legally incorporated, and have usurped, in-
truded into and unlawfully hold the franchise of operating
street railways within the city of Chicago; that in the
passage of said ordinance of November 13, 1913, the city
council of the city of Chicago usurped and exercised pow-
ers not conferred by law; that in the execution of the
contract in said ordinance set forth the respondent corpo-
rations have usurped franchises and privileges and have ex-
ercised powers not conferred by law, and by the transfer

of the operation of their several street railways to the said board of operation and the individuals composing the same, and the officers of said board and the individuals holding such official positions, have usurped franchises, privileges and powers not conferred by law, and in the failure or omission to operate their street railways since February 1, 1914, have forfeited their rights and privileges as corporations.

The information which Judge Goodwin permitted to be filed in accordance with the prayer of the petition, and which was made a part of the petition, consisted of four counts. The first count charged that since the first day of February, 1914, the respondent corporations have wholly failed and omitted to operate any of their street railways, and by reason thereof are liable to a judgment of ouster of their rights and privileges as corporations. The second count charged that by the execution of the contract mentioned in the petition and by transferring to the individuals composing the Chicago Surface Lines Board of Operation the operation of their lines of street railway the respondent corporations exercised and usurped powers and privileges not conferred by law, and called upon the respondent corporations to answer by what warrant they claim to have, use and enjoy the liberties, privileges, licenses and franchises so usurped. The third count charged that the city of Chicago, in passing the ordinance of November 13, 1913, purporting to grant to the individuals composing the board of operation the right to operate the street railways in the city of Chicago and requiring the respondent corporations to enter into the contract set forth in the ordinance, usurped rights, privileges and powers not conferred by law, and called upon the city to answer by what warrant it claims to have, use and enjoy the liberties, privileges, licenses and franchises so usurped. The fourth count charged that the individuals composing the Chicago Surface Lines Board of Operation, and certain individuals

elected as officers of said board, in operating the street railways formerly operated by the respondent corporations are exercising privileges which can only be granted to and exercised by a corporation, and called upon the said individuals to answer by what warrant they, and each of them, claim to exercise such privileges.

The ordinance of November 13, 1913, after reciting that the street railways in the city of Chicago are owned by four different companies, namely, the Chicago Railways Company, the Chicago City Railway Company, the Southern Street Railway Company and the Calumet and South Chicago Railway Company, (the railways owned by the two companies last named being, however, operated by the Chicago City Railway Company,) and that unified operation of all the street railways of the city under one management and control will greatly increase and improve the street railway transportation facilities of the city, provides, among other things, that the said companies shall furnish an adequate and unified traction service within the present and future limits of the city, and to that end are authorized and required to enter into the operating agreement attached to the ordinance and made a part thereof.

The contract which the respondent companies were by said ordinance required to enter into and the carrying out of which resulted in the filing of the petition by the State's attorney for leave to file the information herein, provided that all of the properties, collectively, of the street railway companies should be known and designated as the Chicago Surface Lines; that the Chicago Surface Lines should be operated by a board of operation consisting of seven persons, four of whom should be chosen by the board of directors of the Chicago Railways Company and three by the board of directors of the Chicago City Railway Company, and that said board should be known and designated as the Chicago Surface Lines Board of Operation; that the board should appoint from its members a chairman, who

should possess the powers usually belonging to a chairman of a board of directors of a corporation and such other powers as might be conferred and prescribed by the board; that the board of operation should formulate and put into effect a plan or plans for the efficient and economical unified operation of the Chicago Surface Lines, the same, and with like effect as regards service to the public, as if said lines were owned and operated by one company, and should adopt such rules of procedure for the conduct of its affairs as it should deem advisable; that the board should meet at fixed periods and at such other times as determined from time to time by such rules of procedure; that regular minutes of the proceedings of the board should be kept in a book provided for that purpose; that a majority of the members of the board should be necessary to constitute a quorum, and in every case the affirmative vote of a majority of the members of the board should be necessary for the adoption of any resolution; that the board, in addition to the specific powers conferred upon it by the agreement, and for the proper and effective exercise thereof, should have and exercise the same general powers, as far as applicable and to the extent permitted by law, as are exercised by the board of directors of a corporation under the general corporation laws of this State, and in exercising the powers hereby conferred upon it and in the management and operation of the Chicago Surface Lines the board of operation should be deemed the representative or agent of each of the companies, duly elected, appointed, constituted or authorized by its stockholders and by the holders of any participation certificates or shares or interest in its capital stock, of and for the management and operation of the property of such company. The contract further provided that the board of operation should appoint from its members an executive committee consisting of three persons, one of whom should be designated by the board of directors of the Chicago Railways Company, one by the

board of directors of the Chicago City Railway Company, and the third, who should also be the executive officer of the board, should be designated and appointed by the board of operation; that during the intervals between the meetings of the board of operation the executive committee should possess and exercise all the powers of the board in the management and direction of the affairs of the Chicago Surface Lines in all cases in which specific directions should not have been given by the board, all acts by the executive committee to be reported to the board of operation at its meeting next succeeding such action and to be subject to revision and alteration by the board; that regular minutes of the proceedings of the executive committee should be kept in a book provided for that purpose; that a majority of the executive committee should be necessary to constitute a quorum and the affirmative vote of a majority of the members of the executive committee should be necessary for the adoption of any resolution; that the executive committee should prescribe its own rules of procedure, and should meet as provided by such rules or by the rules or resolutions of the board of operation; that the executive officer appointed by the board should have charge of the management and operation of all of the properties of the railway companies, subject to the approval of the board of operation, and should from time to time define and prescribe the duties of all of the heads of departments and all employees engaged in the operation and management of the properties, and should be vested with such other powers and should perform such other and additional duties as might be conferred and prescribed from time to time by the board of operation; that the board of operation should from time to time appoint such other officers for carrying on its affairs as it might deem advisable and necessary for the conduct of its business; that the city council should have the same control of the board of operation, the executive committee and the executive officer as it had there-

tofore had with reference to the officers and directors of the several companies, and that nothing in the contract should in any way affect the control over the operation of the street railway lines or properties in the city theretofore conferred upon the city council and the board of supervising engineers by ordinance. The contract then provided that out of the gross receipts from the unified operation of the Chicago Surface Lines the board of operation should first deduct all expenses of operation, including maintenance, repairs and renewals, and all damages and claims arising or growing out of injuries to persons or to the property of others incident to the construction or operation of the Chicago Surface Lines, and should then deduct certain other sums for purposes specified in the contract, and that the residue should be divided among the various railway companies parties to the contract, and the city of Chicago, in the proportions specified by the contract. The contract also contained other provisions which we do not deem it necessary to set out in this opinion, except the provision that the board of operation should, as soon as possible after the ordinance of November 13, 1913, should become effective, and not later than February 1, 1914, put into effect the unified operation of the Chicago Surface Lines under said ordinance and contract.

From the affidavits filed it appears that since the board of operation has entered upon the performance of the duties imposed upon it by the contract above mentioned, the board of directors of each of the street railway companies has held monthly meetings and the stockholders have held annual meetings; that the issuance and sale of bonds have been authorized by the various boards of directors to provide funds for construction, re-construction, equipment and extensions of the lines owned by the respective companies; that between February 2, 1914, and January 12, 1915, the city council of the city of Chicago made eleven separate ordinance grants to the Chicago City Railway

Company and four to the Calumet Company, which were duly accepted by those companies. It further appears from the affidavits that in a suit brought by the city of Chicago against the Chicago City Railway Company, which suit was heard in the municipal court of Chicago on December 30, 1914, L. A. Busby testified that he was then operating the Chicago Surface Lines as president thereof; that the Chicago Surface Lines is not a corporation nor is it a partnership; that he is also president of the Chicago City Railway Company, a corporation; that the properties known as the Chicago Surface Lines are operated absolutely by the Chicago Surface Lines, and the individual companies have nothing whatever to do with the conduct of the operation of the lines; that every man employed in the operation of the railways is employed by and through the Chicago Surface Lines, and the underlying companies have nothing whatever to do with the operation of the cars; that the Chicago Surface Lines is not a myth; that it is an actual organization, and is solely responsible for the operation of the lines of street railway in the city of Chicago and is in entire charge and control of those lines.

The question presented by this phase of the case is whether the petition showed probable ground for granting leave to file the information. (*People* v. *Union Elevated Railway Co. supra.*) It was proper in this connection to file affidavits for the purpose of bringing to the attention of the court any fact or facts necessary to enable the court, in connection with the petition, to determine whether there was probable cause for granting the leave. Substantially the only question presented is as to the validity of the unification ordinance and the operating agreement which it required the several street railway companies to enter into. The affidavits presented add but little, if any, information which has any bearing upon the matter, and the question to be determined is wholly one of law.

There can be no serious contention in reference to the right of a municipality to determine its policy as to whether the operation of street railways within its jurisdiction shall be competitive or monopolistic. In *Venner* v. *Chicago City Railway Co.* 258 Ill. 523, the right of the Chicago City Railway Company, by virtue of ordinances of the city of Chicago, to take over, for the purposes of operation and rehabilitation, all the street railways of the Calumet and South Chicago Railway Company and the Southern Street Railway Company, its present subsidiary companies, to the same extent as though the Chicago City Railway Company had been named in the ordinances of the city of Chicago as the original grantee, was challenged, and we there said: "The constitution commits to the city the control of the operation of street railways in its streets. It is for the city to determine whether such operation shall be competitive or monopolistic; to grant the privilege to many or confine it to one. By the ordinance of February 11, 1907, with its expressed intention to provide for the unified operation of all of the street railways within the city, and the subsequent ordinances extending or renewing the privileges of existing companies and requiring such companies to enter into agreements with the Chicago City Railway Company for the operation of their street railway lines, the city has expressed its policy to do away with diversity of control and operation of street railways. The city council has the authority to declare the public policy in regard to the operation of street railways within the city, and the effect of its declaration is the abandonment of the principle of competition between such railways. The combination, union or merger of two or more street railway companies in the city of Chicago for the joint operation of their lines under a single management is not now against public policy, but is in accordance with the declared purpose and desire of the city in regard to street railways." That case definitely decides the right of a municipality to

require the combination, union or merger of the street railways within its jurisdiction and of the street railway companies to comply with the requirement by effecting a combination, union or merger of their properties for the joint operation of their lines under a single management. The only question then remaining is whether or not, by the unification ordinance and the agreement which was entered into by the railway companies pursuant to the requirements of that ordinance, a combination for joint operation of the various street railway lines in the city of Chicago under a single management has been legally effected.

The ordinance, containing, as it does, the agreement which was subsequently entered into by the companies, discloses the complete plan and scheme of the unification or combination of the properties of the railway companies for the joint operation of their lines. The operating agreement entered into is not, as is contended by appellant, in purport and effect an assignment or transfer by the street railway companies of their powers, duties, rights or privileges to individuals. The only purpose of the ordinance is to effect unified operation of the surface street railways in the city of Chicago. The integrity of the defendant railway companies is not in anywise impaired, and by the express terms of the ordinance the responsibility rests upon the respective companies to operate their lines of railway and in every respect comply with the various ordinances applicable to them. Under the agreement entered into the railway companies continue to operate their lines, the members of the board of operation being simply the agents or servants employed to manage the affairs of the respective companies and to carry out the details of the joint operation of the lines. It is not expected or required that the directors of any large corporation shall personally attend to all the details of its management. It is the universal practice to employ various managers, agents and servants to attend to details of operation. The corporation thereby

is relieved of none of its responsibilities and is none the less exercising its powers under its charter. The record does not disclose any agreement or contract of employment entered into between the companies and the members of the board of operation. The operating agreement, however, provides in detail for the method of selecting the members of the board and their powers and duties and discloses the whole relationship between the board and the companies, with the exception of the compensation to be paid to the members of the board for their services. We do not perceive wherein this agreement differs in any essential particular from an ordinary agreement entered into for the establishment of the relationship of principal and agent or employer and employee. The members of the board of operation have no interest in the operation of the street railway properties except that of employees of the companies. They do not participate in the profits earned by the operation of the various street railways and have no personal interest in such operation. The respective companies have in nowise lessened their responsibility to the city or to the public by reason of entering into the operating agreement, but are still responsible for any failure to comply with the laws of the State or any ordinance of the city of Chicago and for every act of the board in the operation of their lines and of the various employees who work under the direction of the board of operation. The ordinance does not profess to make any grant to any individual or company of individuals. The purport and effect of the ordinance, and of the operating agreement which it contains, are to require the Chicago Railways Company and the Chicago City Railway Company, for itself and its two subsidiary companies, to employ their servants in such a manner that the properties of the respective companies can be jointly operated for the mutual benefit of the public and the companies themselves, and under the holding in *Venner* v. *Chicago City Railway Co. supra,* the city had

the right to make such a demand of the railway companies, and they in turn had the right to enter into such an agreement.

The testimony of L. A. Busby given in the municipal court of Chicago in a case there pending against one of the companies which had entered into this agreement is, relied upon as showing that by the construction the companies and board of operation placed upon the unification ordinance and the operating agreement the respective companies had ceased to operate under their charters and that the operation of their respective lines had been transferred to individuals. Assuming that Busby spoke for the members of the board of operation and the respective street railway companies in the giving of this testimony, we do not think it will bear the interpretation given it by appellant. In making this statement Busby gave a fair interpretation of the effect of the provisions of the operating agreement. Under that agreement the properties of the respective companies are to be operated absolutely by the board of operation, and the respective companies, through their boards of directors and other officers, have nothing whatever to do with the details of the management, and the board of operation is solely responsible for the operation of the respective lines of street railways in the city of Chicago, in the sense that they have entire charge of the details for the operation. As above stated, the respective companies are responsible for the conduct of the board of operation in its operation of their properties. They select the members of this board and are responsible for their every act. While that question is not involved, in case any member of the board of operation should exceed his powers or become derelict in his duty, the company appointing would no doubt have the power to discharge him from its employment and appoint another in his stead.

By one of the affidavits it appears that in a number of suits brought in the city of Chicago the sole defendant

has been designated as the "Chicago Surface Lines," and that the Chicago Surface Lines has also been designated as a defendant jointly with one or more of the companies which are parties to the operating agreement. In several instances where the Chicago Surface Lines was the sole party defendant the attorneys employed by the board of operation have entered the appearance of the defendant, and in at least one instance the cause proceeded to judgment. It is contended that by thus appearing in court and defending cases under the name of the Chicago Surface Lines which should properly have been brought against some one or more of the street railway companies, the individuals composing the board of operation are acting as a corporation and are exercising privileges which can only be granted to and exercised by a corporation. That the title "Chicago Surface Lines" is simply the name or designation given to the combined properties of the respective street railway companies is apparent. This is a title or designation of convenience and one which the respective companies have a perfect right to use in referring to their joint property. A suit brought against the Chicago Surface Lines, although service may be had upon the proper officers of some one or more of the street railway companies, is ineffective as against any of the companies which are parties to the operating agreement. The mere fact that those having in charge the operation of the properties of these railway companies did not see fit to take advantage of the failure to name proper parties defendant would not, in itself, establish the fact that the board of operation was attempting to exercise the privileges of a corporation.

The petition did not disclose probable cause for granting leave to file the information, and the judgment of the superior court is affirmed.            *Judgment affirmed.*