THE STATE PUBLIC UTILITIES COMMISSION *ex rel.* Adam S. Clow *et al.* Appellees, *vs.* EDWIN ROMBERG, Appellant.

*Opinion filed October 24, 1916—Rehearing denied Dec. 8, 1916.*

1. CONSTITUTIONAL LAW—*what determines whether a statute is void as contravening public policy.* Whether an act of the legislature is void because it contravenes the public policy of the State depends upon whether the public policy upon the particular subject has been established by statute or by the common law or has been declared by some provision of the State constitution, as in the two former cases the public policy may be changed at will by the legislature, but if the constitution has declared the public policy of the State with reference to a particular subject the legislature is powerless to change it.

2. SAME—*section 22 of article 4 of the State constitution does not declare a public policy opposed to elimination of competition.* Section 22 of article 4 of the constitution, prohibiting the granting of exclusive privileges, does not declare as the public policy of the State that no law shall be passed by the legislature or contract made between individuals the effect of which is merely to suppress or eliminate competition. (*People* v. *People's Gas Light Co.* 205 Ill. 482, followed; *People* v. *Chicago Gas Trust Co.* 130 id. 268, and *Dunbar* v. *American Telephone and Telegraph Co.* 238 id. 456, distinguished.)

3. SAME—*section 22 of article 4 of constitution not opposed to elimination of competition unless a monopoly will be created.* The public policy of the State, as declared by section 22 of article 4 of the constitution, is not opposed to the elimination of competition in all cases, but only applies where a monopoly, in the sense in which that word was used in the common law, will be created, viz., where competition is eliminated by conferring upon a specified person or corporation the right to exclude all others from engaging in the same business in the same field of operation, or by upholding the validity of contracts and agreements which place it within the power of certain individuals or corporations to control production and fix prices, thereby resulting in injury to the public.

4. PUBLIC UTILITIES—*what is not sufficient ground for holding section 27 of the Public Utilities act void as against public policy.* The fact that the common law or a former statute prohibited one corporation from obtaining control over another competing corporation through the purchase of its stocks, bonds and other evidences of indebtedness is not a sufficient ground for holding sec-

tion 27 of the Public Utilities act void as contravening the public policy of the State.

5. Same—*commission may authorize one telephone company to purchase stock of another company.* The State has made provision for the exercise of its right of supervision over public utilities through the State Public Utilities Commission and has empowered said commission to authorize one telephone company to purchase a controlling interest in another company, provided the former company does not by such purchase acquire the right to exclude any other person or corporation from engaging in the telephone business in the same field of operation nor the power to arbitrarily limit the service to be furnished to the public or to fix the rates to be charged.

6. Same—*section 27 of Public Utilities act does not violate section 22 of article 4 of State constitution.* Section 27 of the Public Utilities act, conferring upon one public utility, with the consent of the Public Utilities Commission, the right to obtain control of another competing public utility through the purchase of stock, bonds or other evidences of indebtedness, does not violate the public policy of the State as declared by section 22 of article 4 of the State constitution.

7. Same—*meaning of the term "public utility," as used in section 28 of the Public Utilities act.* The term "public utility," as used in the first paragraph of section 28 of the Public Utilities act, means the plant operated by a public utility, and the section requires that the franchise to own, operate, manage or control the plant shall be vested in a corporation organized under the laws of this State.

8. Telephone companies—*interests of public not best served by competition in telephone business.* The interests of the public are not best served by competition in the telephone business but by the consolidation and merger of competing lines and regulation as to rates and service by the State or some agency thereof.

9. Monopolies—*right of individual to invoke the Federal Antitrust act.* The enforcement of the provisions of the Federal Antitrust act is by the terms of the act itself committed to the Attorney General of the United States, except in cases where an individual can show some special damage resulting to him from a violation of the provisions of the act.

Appeal from the Circuit Court of Sangamon county; the Hon. James A. Creighton, Judge, presiding.

BURKHALTER, GROSSBERG & NEWFIELD, for appellant.

ROSENTHAL & HAMILL, (JOHN P. WILSON, and CHAS. H. HAMILL, of counsel,) for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

On September 20, 1915, the Atlantic and Pacific Telephone and Telegraph Company, (hereinafter referred to as the Atlantic and Pacific Company,) and certain individuals as a committee representing certain stockholders and bondholders of the Inter-State Independent Telephone and Telegraph Company (hereinafter referred to as the Inter-State Company) and bondholders of the Northwestern Telephone Company, filed their joint petition with the State Public Utilities Commission praying that said commission grant leave to the Atlantic and Pacific Company to purchase, and leave to said committee and the stockholders and bondholders represented by them to sell and deliver to the Atlantic and Pacific Company, certain shares of the capital stock and certain bonds and equipment trust notes of the Inter-State Company and certain bonds of the Northwestern Telephone Company. Subsequently the American Telephone and Telegraph Company (hereinafter referred to as the American Company) filed its petition setting forth that it is a corporation organized under the laws of the State of New York; that it owns all of the capital stock of the Atlantic and Pacific Company; that it has power to operate, and does operate, long distance telephone lines in Illinois and other States, and owns a large number of shares of stock in other telephone companies engaged in the transmission of local telephone messages; that the proposed purchase of the shares of stock, bonds and equipment trust notes of the Inter-State Company and of the bonds of the Northwestern Telephone Company by the Atlantic and Pacific Company is at the direction and for the use of the American Company, it being the intention, subject to the regulations of the commis-

sion, to incorporate parts of the physical property of the Inter-State Company with the physical property of some one or more of the subsidiary companies of the American Company. The prayer of the supplemental petition was that the application of the Atlantic and Pacific Company for leave to purchase shares of stock and securities of the Inter-State Company and bonds of the Northwestern Telephone Company be treated as an application on behalf of the American Company.

The Atlantic and Pacific Company is a corporation organized under the laws of New Jersey, is affiliated with the American Company and is part of the Bell system. The Inter-State Company is also a corporation organized under the laws of New Jersey. The Inter-State Company owns all of the property of the Northwestern Telephone Company, subject to the lien of a trust deed securing bonds of the Northwestern Company. Some time prior to August 1, 1912, the American Company, controlling the Bell system, or some one of its subsidiary companies, acquired a majority of the shares of the capital stock of the Inter-State Company and a majority of the bonds and equipment trust notes of that company. The Inter-State Company is engaged in the business of operating telephone lines and exchanges in many cities and towns in the northern half of Illinois in competition with the Bell system. For a number of years it has been operating at a loss and has been unable to meet its obligations as they have matured or to furnish adequate service to the public. A bill having been filed in one of the United States district courts on behalf of the holders of equipment trust notes issued by the Inter-State Company, charging that the Inter-State Company was insolvent and praying for the appointment of a receiver, certain of the stockholders of the Inter-State Company organized themselves into a committee and opened negotiations with the American Company with a view to ascertaining whether the American Company would purchase for

itself or on behalf of some of its subsidiary companies the shares of stock and the bonds and equipment trust notes not then held by or for it. After several months of negotiations the Atlantic and Pacific Company, a subsidiary of the American Company, submitted a written offer to said committee for the consideration of the holders of the stock and securities of the Inter-State Company, proposing to purchase (1) all or not less than ninety per cent of the outstanding bonds of the Inter-State Company not owned by the American Company or its subsidiary companies at forty-six per cent of their par value; (2) all or not less than ninety per cent of the outstanding capital stock of the Inter-State Company not owned by the American Company or its subsidiary companies at four per cent of the par value thereof; (3) all or not less than ninety per cent of the outstanding equipment notes issued by the Inter-State Company not owned by the American Company or its subsidiary companies at seventy per cent of the par value; and (4) all or not less than ninety per cent of the outstanding bonds of the Northwestern Telephone Company not owned by the American Company or its subsidiary companies at forty-six per cent of the par value; provided, however, that the proposed purchase should receive the approval of all Federal, State and municipal authorities whose consent to the transaction should, in the opinion of the purchaser, be desirable; and provided further, that said securities, upon delivery to the purchaser, should be accompanied by resignations of the directors and other officers of the Inter-State Company, to take effect upon their acceptance.

The committee submitted the proposal to the holders of the bonds, stocks and equipment trust notes and advised the acceptance of the offer and the deposit of the shares of stock and securities with the Northern Trust Company for delivery by the committee to the Atlantic and Pacific Company. Thereafter approximately eighty-five per cent of the bonds, eighty-six per cent of the shares of stock and ninety-

eight per cent of the equipment trust notes of the Inter-State Company not already held by or in the interest of the American Company, and ninety-three per cent of the bonds of the Northwestern Company, were deposited with the Northern Trust Company for delivery by the committee to the Atlantic and Pacific Company upon the terms stated in the offer made by that company. Edwin Romberg, the owner of fourteen bonds of the Inter-State Company and the holder in trust of two other bonds of that company, each bond being of the par value of $1000, refused to accept the offer for the purchase of the bonds owned and controlled by him. The Atlantic and Pacific Company thereafter waived the requirement that at least ninety per cent of each class of securities must be tendered, and offered to accept such shares of stock and securities as were on deposit with the Northern Trust Company on May 27, 1915.

Various telephone companies filed intervening petitions, setting up contracts for telephone connections with the Inter-State Company and praying that their rights under such contracts be protected by the commission in case the prayer of the petition should be granted. Romberg filed objections to the petition, based upon the ground that the ultimate object of the proposed purchase is the creation and perpetuation of a monopoly in the telephone business in the territory in which the Inter-State Company and the Bell system are now both operating.

The respective parties offered evidence before the commission, after considering which the commission entered an order finding the facts as above set forth and that it is to the best interests of the Inter-State Company and the telephone-using public and of the people of the State of Illinois that the prayer of the original and supplemental petitions be granted on the terms and conditions specified in the order. The order granted leave to the Atlantic and Pacific Company to purchase the outstanding stock, bonds and equipment trust notes of the Inter-State Company and

the bonds of the Northwestern Telephone Company at the price stated in the offer made by it, and authorized the Atlantic and Pacific Company to sell and transfer the same to the American Company, and authorized the latter company to hold, own and control such bonds, stock and notes; provided, however, that until the further order of the commission the Inter-State Company shall continue as a separate corporate entity and shall be operated as such and shall keep up its equipment so as to provide adequate service; and provided further, that all existing contracts between the Inter-State Company and other companies shall be fully kept and performed, together with the division of business, rates, tolls and charges and the routing of messages as provided in such contracts or by existing methods of handling business, all of which shall continue as they now exist; provided, however, that if any portion of the lines or plant of said Inter-State Company (toll lines excluded) shall become so impaired that adequate service thereover shall be impossible, the Atlantic and Pacific Company may provide substitutes therefor, similar in quality and quantity, which will permit such service to be furnished the same as it would be furnished under existing contracts or methods of doing business if the lines of the Inter-State Company were used. The order stated that it was entered upon the further condition that the money expended by the Atlantic and Pacific Company and the American Company in purchasing the stocks and securities above described should not be considered as an expenditure of capital funds, and that neither of said companies, its successors, lessees or assigns, shall at any time issue stocks, bonds or other evidences of indebtedness for the purpose of reimbursing its treasury for the money expended in the purchase of said stocks and securities. It was further provided that the order should not become effective unless the Atlantic and Pacific Company and the American Company should within ten days notify the commission, in writing, of their acceptance of all the terms

and conditions of the order. The commission retained jurisdiction of the subject matter and of the parties to enter hereafter such order with reference to the control or disposition of the Inter-State Company as may be within the jurisdiction of the commission and as circumstances may require. Romberg alone prosecuted an appeal to the circuit court of Sangamon county, where the order of the commission was affirmed, and he has prosecuted a further appeal to this court.

Section 27 of the State Public Utilities act provides in part: "With the consent and approval of the commission, a public utility may purchase, acquire, take, or hold stock, stock certificates, bonds, notes or other evidences of indebtedness of another public utility." (Hurd's Stat. 1916, p. 2027.) It is by virtue of this provision of the statutes that the Atlantic and Pacific Company or the American Company has acquired the right, with the consent and approval of the State Public Utilities Commission, to purchase the stock, bonds or other evidences of indebtedness of a competing public utility, if such right exists.

Appellant contends that said section 27, in so far as it purports to confer upon one public utility the right to obtain control of another competing public utility through the purchase of its stock, bonds and other evidence of indebtedness, contravenes the public policy of this State and is therefore void. Whether an act of the legislature is void because it contravenes the public policy of the State depends upon whether the public policy upon the particular subject has been established by statute or is a part of the common law or has been declared by some provision of the State constitution. If it exists merely by virtue of some statute or the common law it may be changed by the legislature at will. If the constitution has declared the public policy of the State with reference to the particular subject the legislature is powerless to change it. The fact that the common law or some former statute prohibited one public utility from ob-

taining control over another competing public utility through the purchase of its stocks, bonds and other evidences of indebtedness is therefore not a sufficient ground for holding that the provision of said section 27 above quoted is void because it contravenes the public policy of the State.

Appellant contends, however, that section 22 of article 4 of the State constitution, which provides that the General Assembly shall not pass local or special laws "granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever," constitutes a clear declaration that the public policy of the State is opposed to monopolies, and that an act of the legislature attempting to authorize and legalize the elimination of competition is therefore unconstitutional and void. In support of this contention the appellant relies upon certain language used in *People* v. *Chicago Gas Trust Co.* 130 Ill. 268, and *Dunbar* v. *American Telephone and Telegraph Co.* 238 id. 456. In the first of these cases it appeared that the Chicago Gas Trust Company had been organized under the general Incorporation act of this State for the express purpose, among others, as stated in its articles of association, of purchasing and holding the capital stock of any gas or electric company or companies in the city of Chicago or elsewhere in the State of Illinois, and that after its organization it proceeded to acquire the shares of stock of each of the gas companies then furnishing gas to the city of Chicago and its inhabitants. We held that this action on the part of the Chicago Gas Trust Company was illegal on two grounds: First, because the legislature had not conferred upon corporations organized under the general Incorporation act for some purpose specified in that act the power to purchase and hold shares of stock of other corporations; and second, because, by the common law, contracts having a tendency to create monopolies were void, and the general Incorporation act, which provides that corporations may be formed in the manner provided by the act for any lawful

purpose, except certain specified purposes, did not authorize the organization of a corporation for the purpose of purchasing and holding the capital stock of all other corporations engaged in the same kind of business in the city of Chicago or elsewhere in the State of Illinois, as that was not a lawful purpose. That part of the opinion upon which appellant relies is as follows:

"We have been referred to more than fifty special charters granted by the legislature of this State in the years 1853, 1854, 1855, 1857, 1859, 1861, 1865, 1867 and 1869 to gas companies in various cities and towns in the State, each one of which confers the exclusive privilege of laying gas pipes in the streets for a number of years. But when the constitution of 1870 was adopted, it provided, in section 22 of article 4, that the General Assembly should pass no local or special law for 'granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever,' and in section 1 of article 11, that 'no corporation shall be created by special laws, * * * but the General Assembly shall provide, by general laws, for the organization of all corporations hereafter to be created.' Manifestly, the constitution of 1870 reversed the old policy of granting exclusive privileges to gas companies. After 1870 the public policy of the State was against the granting of exclusive privileges to corporations of any kind. The general Incorporation act of 1872 was passed in pursuance of section 1 of article 11. The prohibition of special charters granting exclusive privileges, and the authorization of incorporations under a general law, followed by the passage of such a law, put the people of this State on record as being opposed to the creation of monopolies of all kinds. But of what avail is it that any number of gas companies may be formed under the general Incorporation law if a giant trust company can be clothed with the power of buying up and holding the stock and property of such companies, and, through the control thereby attained, can direct all their

operations and weld them into one huge combination? The several privileges or franchises intended to be exercised by a number of companies are thus vested exclusively in a single corporation. To create one corporation for the express purpose of enabling it to control all the corporations engaged in a certain kind of business, and particularly a business of a public character, is not only opposed to the public policy of the State but is in contravention of the spirit, if not the letter, of the constitution. That the exercise of the power attempted to be conferred upon the appellee company must result in the creation of a monopoly results from the very nature of the power itself.   *   *   * Suppose that after appellee had purchased and become the holder of the majority of shares of stock of the four companies in Chicago another corporation had been organized with the same object in view,—that is to say, for the purpose of purchasing and holding a majority of the shares of stock of the gas companies in Chicago. There being only four of such companies, what would there be for the corporation last formed to do? It could not carry out the object of its creation, because the stock it was formed to buy was already owned by an existing corporation. Hence to grant to the appellee the privilege of purchasing and holding the capital stock of any gas company in Chicago is to grant to it a privilege which is exclusive in its character. It is making use of the general Incorporation law to secure a special 'privilege, immunity or franchise.' It is obtaining a special charter, under the cover and through the machinery of that law, for a purpose forbidden by the constitution. To create one corporation that it may destroy the energies of all other corporations of a given kind and suck their life blood out of them is not a 'lawful purpose.' "

Afterwards, in 1897, the legislature passed an act authorizing the consolidation and merger into one corporation of all gas companies organized in this State doing business in the same city, town or village. (Hurd's Stat. 1916,

· p. 687.)   A merger, under the provisions of this act, of the gas companies doing business in Chicago was attacked but was held valid in *People* v. *People's Gas Light Co.* 205 Ill. 482, it being there held that the act of 1897, under which the gas companies were merged into one corporation, is not in violation of section 22 of article 4 of the constitution, and that as section 11 of the act provides that the corporation into which any companies are merged shall not increase the price charged for gas of the quality furnished to consumers during any part of the year immediately preceding such consolidation and merger and shall furnish gas to consumers as good in quality as that furnished previous to the consolidation and merger, and as section 12 provides for the infliction of penalties for the violation of the provisions of section 11 and the recovery of damages by any person injured thereby, the act neither promotes nor creates a monopoly.

The *Dunbar case, supra,* presented the question whether one corporation organized for a lawful purpose could legally purchase a majority of the shares of stock of a competing company, and in holding that it could not, the rules of law applied in *People* v. *Chicago Gas Trust Co. supra,* were followed.   That part of the opinion upon which appellant relies is as follows: "The public policy of the State on any question is to be sought for in the constitution and legislation as interpreted and expounded by the courts.   Section 22 of article 4 of the constitution of 1870 provides that the General Assembly shall pass no local or special law for 'granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever.'   This is a clear declaration that the public policy of this State is opposed to all exclusive and monopolistic franchises and powers, of whatsoever kind or character."

That it was not the intention of this court in either of the cases relied upon by appellant to announce the doctrine that section 22 of article 4 of the constitution had declared

as the public policy of the State that no law should be passed by the legislature or contract made between individuals the effect of which would be to suppress or eliminate competition is evident from the decision rendered in *People* v. *People's Gas Light Co. supra,* and other cases in which the question was directly involved and expressly decided. In *Venner* v. *Chicago City Railway Co.* 258 Ill. 523, we upheld an agreement made under and by virtue of an ordinance of the city of Chicago, the effect of which was to place the joint operation of all the surface lines of street railway in the city of Chicago under a single management, notwithstanding the fact that one of the results of unified operation would be to eliminate competition. We there held that the city council has the right to declare whether the operation of street railways in the streets of a city shall be competitive or monopolistic, and this holding was approved and followed in *People* v. *City of Chicago,* 270 Ill. 188. Again, in *Union Trust and Savings Bank* v. *Telephone Co.* 258 Ill. 202, we said: "The courts have declared the public policy of the State, in accordance with the common law, to be opposed to such contracts which tend to put the power to render public service in the hands of one corporation and to take it away from all others. The legislature has the power to change this policy. It is a legislative question whether the public interest will be promoted by monopolistic rather than competitive service."

The public policy of the State, as declared by section 22 of article 4 of the constitution, is not opposed to the elimination of competition in all cases, but only applies where a monopoly, in the sense in which that word was used in the common law, would be thereby created, viz., where competition is eliminated by conferring upon a specified person or corporation the right to exclude all others from engaging in the same business in the same field of operation, or by upholding the validity of contracts and agreements which place it within the power of certain individuals or corpora-

tions to control production and fix prices, thereby resulting in injury to the public. No such consequences can follow the purchase by the American Company of a controlling interest in the Inter-State Company under the authority conferred upon it by the State Public Utilities act. The American Company will not by this purchase acquire the right to exclude any other person or corporation from engaging in the telephone business in the same field of operation, nor will it be within its power to arbitrarily limit the service to be furnished to the public or fix the rates to be charged for the service rendered. The State possesses the right to exercise supervision over public utilities with reference to such matters, and has made provision for the exercise of such right through the State Public Utilities Commission. Instead of resulting in injury to the public, the tendency of the elimination of the Inter-State Company as a competitor of the Bell system would be to benefit the public. As we said in *Union Trust and Savings Bank* v. *Telephone Co. supra:* "It is the possibility of connection with a large number of instruments that gives usefulness to the system. The use of the telephone has come to be quite generally regarded not as a luxury or convenience but a necessity, and it is essential to the greatest public convenience that all users of telephones should be able to secure, as nearly as possible, direct connection with all other users." To the same effect is *State Public Utilities Com.* v. *Noble,* (*ante,* p. 121.) The interests of the public are not best served by competition in the telephone business, but by the consolidation and merger of competing lines and regulation as to rates and service by the State or some agency thereof.

In our opinion one of the purposes of the provision of section 27 of the State Public Utilities act above quoted was to afford relief to the public where such a state of facts exists as was disclosed to the commission in this case; that the provision applies to competing as well as non-competing public utilities, and that in so far as it purports to confer

upon one public utility the right to obtain control of another competing public utility through the purchase of stock, bonds and other evidences of indebtedness, it is not in violation of the public policy of this State as declared by section 22 of article 4 of the State constitution.

It is also urged that the purchase of the stock, bonds and securities of the Inter-State Company by a competing company violates the Federal Anti-trust law. Appellant is in no position to invoke the Federal Anti-trust act in this case. The enforcement of the provisions of that act is by the terms of the act itself committed to the Attorney General of the United States, except in cases where an individual can show some special damage resulting to him from a violation of the provisions of the act. (*Minnesota* v. *Northern Securities Co.* 194 U. S. 48; *Wilder Manf. Co.* v. *Corn Products Co.* 236 id. 165.) Appellant has shown no special damage resulting to him from the purchase by the American Company of stock and bonds of the Inter-State Company from persons other than appellant, and the question whether the transaction violates the Federal Anti-trust act cannot be determined in this suit.

It is finally contended that section 28 of the State Public Utilities act prohibits the Atlantic and Pacific Company and the American Company, both of which are foreign corporations, from purchasing a majority of the stock and securities of the Inter-State Company and thereby obtaining control of that company. That section is as follows:

"No franchise, license, permit or right to own, operate, manage or control any public utility, except common carriers engaged in inter-State commerce, shall be hereafter granted or transferred to any grantee or transferee other than a corporation duly incorporated under the laws of this State.

"No public utility shall be in any manner exempt from the provisions of this act because or by virtue of the fact

that it may be or may have been incorporated or organized under the laws of another State, or of the United States, or of a foreign country."

Notwithstanding the fact that by section 10 of the act the term "public utility," when used in the act, is declared to mean "every corporation, company, association, joint stock company or association, firm, partnership or individual" engaged in certain lines of business, it is evident that the term as used in the first paragraph of said section 28 can not be given such meaning. If the term as there used be given the meaning declared by section 10, the section would, in effect, provide that no franchise, license, permit or right to own, operate, manage or control any corporation, etc., or individual engaged in the lines of business specified, should be granted or transferred to any other than a corporation organized under the laws of this State. The term "public utility," as used in the first paragraph of section 28, evidently means the plant operated by a public utility, and the section requires that the franchise to own, operate, manage or control the plant shall be vested in a corporation organized under the laws of this State. The purchase by the American Company of a majority of the shares of stock and securities of the Inter-State Company has not divested and can not divest the Inter-State Company of its franchise to own, operate, manage or control its plant. The order of the commission expressly preserves the integrity of the Inter-State Company and its franchise rights. There is therefore nothing in this transaction which violates the provisions of section 28 of the State Public Utilities act.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*