(No. 29183.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* CHICAGO TRANSIT AUTHORITY *et al.,* Appellees.—THE PEOPLE *ex rel.* William J. Tuohy, State's Attorney, Appellant, *vs.* CHICAGO TRANSIT AUTHORITY *et al.,* Appellees.

*Opinion filed November 21, 1945.*

78

80

WILLIAM J. TUOHY, State's Attorney, (JACOB SHAMBERG, GORDON B. NASH, and MEYER H. GOLDSTEIN, of counsel,) all of Chicago, for appellant.

BARNET HODES, Corporation Counsel, WERNER W. SCHROEDER, CHAPMAN & CUTLER, and WILLIAM H. SEXTON, all of Chicago, (SVEINBJORN JOHNSON, of Urbana, of counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

The questions arising in this case involve the validity of an act entitled: "An Act to create a municipal corporation for public ownership and operation of a transportation system in the metropolitan area of Cook County," to be known as the "Metropolitan Transit Authority Act." (Ill. Rev. Stat. 1945, chap. 111⅔, pars. 301 *et seq.*) The corporation created by this act will be hereinafter referred to as the Authority. The cause comes here on an appeal from an order and judgment of the circuit court of Cook county sustaining motions to strike an information in *quo warranto* brought by the State's Attorney of Cook county, and an information in chancery for injunction brought by the State's Attorney to enjoin expenditure of funds. This act was passed by the Sixty-fourth General Assembly and was approved by the Governor April 12, 1945, with an emergency clause. There was also passed by the same General Assembly an act to amend certain sections of article 23 of the Revised Cities and Villages Act, under which amendment the city council of the city of Chicago passed an ordinance authorizing and granting to the Authority exclusive right to acquire, construct, maintain and operate facilities for local transportation within the city of Chicago for the term of fifty years, and thereafter until

terminated, and granting the use of the streets, city-owned subways, and public places therefor. The Chicago Park District Act and other acts relating to this matter, but unnecessary to discuss here, were also amended.

The Transit Authority Act requires that, before the Authority can assume any of the power granted it, the adoption of the act be submitted to a vote of the people. Under the act and the city ordinance so providing, the question of the adoption of the act was submitted to a vote of the people on June 4, 1945, the date of the judicial election, and the act was adopted. Thereafter the appointments of members of the Chicago Transit Board, the governing body, were made by the Governor and by the mayor of Chicago, in accordance with the terms and provisions of the Transit Authority Act.

Objections concerning the validity of the act are hereinafter set out and referred to. It is also objected that the act fails to express facts sufficient to constitute an emergency, as required by section 13 of article IV of the constitution, and so was not in effect on the date of its approval by the Governor nor at the time of its adoption by a vote of the people. The ordinance was also objected to for reasons hereinafter referred to.

The Transit Authority Act, consisting of forty-five sections, purports to establish a municipal corporation and to vest in it powers, as such, to own, operate and maintain a transit system in the metropolitan area of Cook county. By section 3 all the territory in Cook county lying east of the east line of range 11, east of the third principal meridian, is constituted a political subdivision, body politic and municipal corporation. This embraces the thickly populated area in Cook county and includes 85 cities and villages other than the city of Chicago. The Authority may construct, own and operate for public service, a transportation system; may acquire by lease, purchase or condemnation existing transportation lines, and may enter into con-

tracts for joint use of utility property for transportation purposes. It is given the power of eminent domain and may sue and be sued. It is given the right to use any street or road within the area for interurban transportation of passengers though it may not engage in local transportation of passengers within any municipality unless authorized by an ordinance of that municipality, which has been approved by a popular vote. It may borrow money, issue bonds or certificates commonly known as revenue bonds, which are payable solely from the revenues of the system, and it is declared in the act that in no event shall they constitute a lien on the property of the Authority or constitute a debt of the Authority, the State, county, or any city or other municipality. The Authority is given no power to levy taxes for any purpose. The act provides for a civil service system and provides that the employees of any public utility acquired by the Authority shall be transferred to the Authority and retain their positions. The Transit Authority Board is empowered to make rules and regulations to further the purposes of its existence, and fix fares and charges as prescribed in section 30 of the act. It can act only by ordinance or resolution adopted by a majority vote of the board. The act makes it the duty of the board to rehabilitate, reconstruct and modernize the transit systems acquired by it and adapt them to the use and needs of the municipality served. The act provides and regulates actions for personal injuries, requiring that notice of such actions be the same as that required in cases of suits against cities.

Chief among the questions presented,—the answer to which provides the solution of numerous other questions raised on this record,—is whether the act creates a municipal corporation. Counsel for appellant contends that a municipal corporation has not been created and therefore it is not entitled to exercise the rights, privileges, functions and authority, and to enjoy the exemptions of a municipal

corporation; that its primary purpose is to engage in business and not to discharge a public function; that there is provided merely a transitory and territorial subdivision of the State, not strictly a corporation but at most a *quasi* corporation, since it was created not voluntarily by a vote of the people but by the act of the General Assembly. It is claimed that it has no power of local self-government but only the power to operate and maintain the property and facilities for transit business. It is not contended, as we understand counsel for the People, that the General Assembly may not create public and private corporations of such description as it chooses, but the contention is that in this case the General Assembly has not created a public municipal corporation, and that calling it such does not make it one; that public municipal corporations are formed to exercise some delegated power of government of the State but that the Authority has no such delegated power; that its functions are entirely proprietary, and, conceding that municipalities may go into the public utility business, such as selling water, electricity, gas, and the like, the test here is whether governmental functions have been vested in this corporation. They contend that the Authority is no more a public municipal corporation than a railroad which operates a business impressed with public interest; that since the Authority has no other function, it cannot be said to be a municipal corporation.

Counsel cite the cases of *City of Chicago* v. *Ames*, 365 Ill. 529, *Wagner* v. *City of Rock Island*, 146 Ill. 139, *People ex rel. Mortell* v. *Bergman*, 253 Ill. 469, and other cases, as drawing the distinction between public and private corporations, and between municipal and *quasi* municipal corporations. They argue that the Authority has no municipal powers, does not govern, was not created for that purpose, and has no political rights, and they point out as evidence of that fact the provision of the statute that the

Authority has no power to levy taxes. They say that it is given no police powers, and, being an involuntary corporation, was not created with the view to engage in commerce.

On the other hand, appellees argue that the legislative intent to create a municipal corporation is clearly shown by the act. They point to section 3 providing that the territory therein described is by the act created "a political subdivision, body politic and municipal corporation;" that there is no express constitutional prohibition against the creation of a municipal corporation such as created here. They argue that the Authority was created for a public municipal purpose; that the operation of an adequate, modern transportation system is well calculated to attain the objects of State police power, *i.e.,* the promotion of public comfort, health, safety and general welfare. They say that since common-carrier transportation has always been deemed to be affected with the public interest, it follows that if the police power of the State may regulate the existence and right to operate a public transportation system, it can, by the same power, create a public municipal corporation to furnish adequate transportation, and the facts that the Authority is endowed with large proprietary powers and does not have the taxing power do not militate against the existence of the basic public purpose of providing for the general welfare of the territory involved. They say that this is the end and aim of the creation of the Authority which gives it its public municipal character.

This court has frequently called attention to the fact that the constitution of this State is not a grant of power to the General Assembly but is a limitation upon its power. All legislative power is vested in the General Assembly subject to the restrictions contained in the constitution. *People ex rel. Greening* v. *Bartholf,* 388 Ill. 445; *Kocsis* v. *Chicago Park District,* 362 Ill. 24; *Board of Education*

v. *Upham,* 357 Ill. 263; *Taylorville Sanitary Dist.* v. *Winslow,* 317 Ill. 25; *Perkins* v. *Board of County Comrs.* 271 Ill. 449, and *People ex rel. Wilson* v. *Salomon,* 51 Ill. 37.

The modern concept of public purpose is elastic and capable of expansion to meet changing conditions. The determination of what is for public good and what are public purposes are questions to be decided in the first instance by the General Assembly. In so doing that body is vested with a large discretion which the courts cannot control except where its action is evasive of or contrary to some prohibition of the constitution. Limitations resting in theory only, or on vague ground of doubt, but which the people have been satisfied to leave to the judgment, patriotism and sense of justice of representatives, are not within the control of the courts. (*Hagler* v. *Small,* 307 Ill. 460; *Loan Association* v. *Topeka,* 20 Wall. 655, 22 L. ed. 455; Cooley's Const. Lim. 154.) As was said by Mr. Justice Holmes in *Block* v. *Hirsh,* 256 U. S. 135, 65 L. ed. 865, "A declaration by a legislature concerning public conditions that, by necessity and duty, it must know, is entitled at least to great respect."

A large number of acts are to be found on the statute books of this State as indicating the breadth of the concept of a public purpose in legislation. They range all the way from poultry exhibits to public parks and hospitals. They are too numerous to cite specifically in this opinion. They all evidence the wide range and elastic character of the concept of a public purpose. To declare and provide for such purpose is pre-eminently the duty of the General Assembly. The operation of public utilities by cities has been recognized as a public purpose. The Cities and Villages Act contains comprehensive provisions for the operation of a variety of public utilities. These have been upheld as within the power of the General Assembly. *City of Mattoon* v. *Graham,* 386 Ill. 180; *Hairgrove* v. *City*

*of Jacksonville,* 366 Ill. 163; *Springfield Gas and Electric Co.* v. *City of Springfield,* 292 Ill. 236, and other cases.

There can be little doubt that it was the intention of the General Assembly to organize the Authority for a municipal public purpose, *i.e.,* to operate an adequate and modern transportation system suitable and adapted to the needs of the municipalities served by the Authority. This court has recognized the importance and necessity of adequate and modern transportation in the metropolitan area of Chicago. (*People* v. *City of Chicago,* 349 Ill. 304.) This metropolitan area has a large, highly concentrated, central business district, and residential and local business areas which extend for many miles,—approximately eleven miles to the north, over twenty miles to the south and southwest, seventeen miles to the northwest and nine miles to the west. In all this area the people not possessing their own means of transportation must look to the common carriers as means of reaching their places of business or employment. It would be difficult to measure the suffering that would exist in an area of that character without transportation. Surely it requires no stretch of imagination on the part of the General Assembly to conceive that adequate transportation is necessary to the health, safety and public welfare of the people of that area.

A somewhat similar situation arose in the city of New York. The General Assembly of New York had provided for the creation of a commission for the purchase and construction of rapid-transit railways in that city. It provided for the issuance of a large amount of bonds which were to become the debt of the city of New York. The constitution of that State provided no city could incur any indebtedness except "for city purposes." The purposes of the commission there created were held to be city purposes. (*Sun Publishing Ass'n.* v. *Mayor of New York,* 8 App. Div. 230.) It was in that case recognized, as a matter of

judicial notice, that the health of the people depends to a not inconsiderable degree upon decent and convenient transportation between their homes and their places of business.

In *People ex rel. Curren* v. *Wood,* 391 Ill. 237, where many of the questions raised here were answered, it was recognized that the development of airways and the control and operation of airports is a proper governmental function. The situation in the Cook county area, out of which this legislation has grown, is unparalleled in the history of attempts on the part of municipalities and private interests to provide an adequate transportation system. We are unable, within the confines of this opinion, to set forth in detail the many facts which have contributed to that situation. In *People* v. *City of Chicago,* 349 Ill. 304, some of them were referred to in a review of the background for the attempted consolidation of the transit systems then under consideration. Since 1859, when the first street railway company was organized for operation in Chicago, there have been eighteen of such companies, which, by various consolidations and foreclosures were reduced to four, all of which are now in receivership proceedings.

From the institution of equity receivership proceedings in 1926, involving Chicago railway companies, the record here shows many unsuccessful efforts to reorganize Chicago Surface Lines and Chicago Rapid Transit Lines. Ordinances were passed providing for the merger of these lines. This ultimately failed. For more than fifty years various actions taken, both by private interests and by the city, in an effort to reorganize and procure an adequate transportation system, have all failed. It was found that the city was unable to take over these lines and that sufficient private funds could not be procured. Different plans for reorganization were worked out for private operation of these lines but resulted in failure. Ordinances were passed only to meet with like fate. Without going into detail as to these many efforts and failures, some of which

were set out in *People* v. *City of Chicago,* 349 Ill. 304, they presented to the General Assembly a situation unparalleled in the history of American cities.

The need for adequate transportation in that area is not only evident but pressing. Much of the equipment in use has become old and defective. It appears impossible to finance the rehabilitation of existing facilities either by the city or by private funds. Faced with this situation, the General Assembly concluded that it was a case where the assistance of the State was imperative to protect the health, safety and general welfare of the public in that area, and it is not for the courts to say that a public purpose does not exist or that the General Assembly may not properly find that it does.

Counsel for appellant argue, however, that a distinction exists between giving such powers to a city, and attempting to give them to the Authority as a municipal corporation. We are not impressed with the distinction sought to be drawn. The purpose of municipal corporations generally is to carry into effect some power which the State itself may, but cannot conveniently, exercise, and we see no distinction between the power of the State to establish a municipality or a municipal corporation to carry out a public purpose and the vesting of such power in a municipality already in existence. The transportation system provided is to be operated over the public highways of the area included. In the absence of constitutional limitation the control of the General Assembly over public highways is absolute and it may give jurisdiction over them to such agencies as it may see fit, and it may change the control of them at its pleasure. *Mitchell* v. *Lowden,* 288 Ill. 327; *Cicero Lumber Co.* v. *Town of Cicero,* 176 Ill. 9; *Illinois Malleable Iron Co.* v. *Lincoln Park Comrs.* 263 Ill. 446.

Nor is the fact that the Transit Authority Act does not vest the taxing power in the Authority to be taken as evidence that it is not a municipal corporation. There is no

requirement of the constitution that municipal corporations be given taxing powers. Section 9 of article IX of the constitution provides that "the General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of contiguous property, or otherwise. For all other corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes;" etc. It will readily be perceived that this provision is permissive and is not a prerequisite to the existence of a municipal corporation.

Nor can it be said that the Authority is not vested with governmental powers. By section 28 of the act, the board shall establish and maintain a system of civil service and a retirement system. By section 30 it is to fix rates, fares and charges for transportation. By section 23 all its ordinances, proceedings and documents are declared to be public records. These and other provisions of like nature show that certain governmental powers are vested in the Authority. As already indicated, many of the objections raised to the act are based on the contention that the Authority is not and cannot be a municipal corporation. Since we hold a contrary view, it will be unnecessary to consider questions based upon the hypothesis that the Authority is not a municipal corporation.

It is also argued that the act violates section 13 of article IV of the constitution in that it does not express in its title the subject matter of the act and its title embraces more than one subject. And it is also argued that the act improperly amends various statutes under which public and private corporations were organized, with respect to investment of sinking funds, and amends various other statutes enumerated in the argument. This court has repeatedly announced that if an act is complete in itself, without reference to the general act, it does not contravene

section 13 of article IV of the constitution because it repeals, modifies or amends by implication the general act. *People* v. *Wood,* 391 Ill. 237; *St. Louis Bridge Co.* v. *Becker,* 372 Ill. 102; *Hollingsworth* v. *Chicago and Carterville Coal Co.* 243 Ill. 98.

Nor can the objections that certain provisions are not embraced in the title be sustained. The same objection was raised and decided adversely to that contention concerning the validity of the Illinois Housing Authority Act, where similar provisions were considered. (*Krause* v. *Peoria Housing Authority,* 370 Ill. 356.) The rule is that if a provision tends legitimately to accomplish the general objects of the act, such provision does not violate the constitutional requirement that no act shall embrace more than one subject and that such subject shall be embraced in the title. *People ex rel. Wies* v. *Bowman,* 247 Ill. 276; *People* v. *McBride,* 234 Ill. 146; *Meul* v. *People,* 198 Ill. 258.

It is also argued that the act grants special privileges contrary to the prohibition of section 14 of article II of the constitution, and particularly section 22 of article IV, in that the Authority is authorized to build railroad tracks. The specification of section 22 referred to forbids local or special laws "granting to any corporation, association or individual the right to lay down railroad tracks, or amending existing charters for such purposes." This also includes prohibition against the granting of special privileges, immunities or franchises. The argument is that this act creates a monopoly through an irrevocable grant of special privileges in that it confers complete power over transportation in the area defined by the act. Section 11 of the Transit Authority Act, referred to in this contention, gives the right, but not to the exclusion of the public right, to use any public road, street or other public way within the metropolitan area, for interurban transportation of pas-

sengers. It, however, requires that before local transportation of passengers may be engaged in, the approval of the municipality affected shall be obtained by ordinance and vote of the people. It is argued that acquiring and operating a transportation system such as contemplated by this act will create a monopoly to the exclusion of other transportation companies. This contention was raised in *People v. City of Chicago,* 349 Ill. 304, in an attack upon the act there considered. In the case before us, as in the case cited, there is no limit to the number of corporations which may be organized in this area. Section 11 declares that the Authority shall not have exclusive use of the streets, and even though the effect of the operation of the Authority may be to prevent operation of other transportation systems in the area and to thus create a monopoly, such is not open to constitutional objection. *Public Utilities Com. ex rel. Clow v. Romberg,* 275 Ill. 432.

It is also contended that the Transit Authority Act is a local or special law granting a special privilege to the Authority with respect to rates of fare to be charged, and provides no statutory provision for judicial review, contrary to section 22 of article IV of the constitution. In argument appellant's counsel admit that individuals or groups may have judicial review of rates established by the Authority but they say that, as a practical matter, such could not be done, and that under the plan there is no board or body supervising the operations and charges of the Authority. Section 30 of the act authorizes the Chicago Transit Board to fix rates, fares and charges for transportation, such rates to be limited to an amount which will produce certain items of expense there enumerated. Under that section the board may not put into effect charges or rates which would result in the accumulation of a surplus over the items there referred to. In this respect the Authority does not differ from a utility owned and operated by a city.

This provision is not local or special. A law is general, not because it embraces all the governed, but because it may, from its terms, embrace all who occupy a like position to those included. While an act of the General Assembly may discriminate, it must be based on some substantial difference between the situation of one class and that of another to which it does not apply. (*Chicago, Burlington and Quincy Railroad Co.* v. *Doyle,* 258 Ill. 624.) That there is a substantial difference between the situation of passengers in the area here involved and those in the balance of the State, is readily seen. This contention cannot be sustained.

The argument is also made that the power granted by section 7 of the act to acquire by eminent domain any existing transportation system, is a denial of the equal protection of the laws and the constitutional right of existing transportation companies to engage in legitimate business. This argument is bottomed on the contention that the Authority is not a municipal corporation, and as we hold that it is and counsel admit that the General Assembly may vest such power of eminent domain in a municipal corporation, it is unnecessary to further discuss this objection.

It is also objected that the act is invalid in that it permits the creation of an indebtedness within the meaning of section 12 of article IX of the constitution. Section 12 of this act provides that the bonds and other evidences of indebtedness shall be paid solely from the revenues or income derived from the system. Any trust agreement entered into covering the issuance of bonds or certificates shall have the same provision. It is provided that the bonds shall not become the indebtedness or obligation of the State or any political subdivision or municipality within the State, and shall not become an indebtedness of the Authority. To constitute a debt against a municipality there must be an obligation which the municipality must, if need be, meet with its funds or property. But if the obligation

is to be paid solely from the income derived from the property purchased with the bonds or their proceeds, no indebtedness is incurred. (*Hairgrove* v. *City of Jacksonville,* 366 Ill. 163; *City of Edwardsville* v. *Jenkins,* 376 Ill. 327.) This contention cannot be sustained.

Complaint is also made that the property of the Authority is exempt from taxation. Under paragraph (13) of section 19 of the Revenue Act, (Ill. Rev. Stat. 1945, chap. 120, par. 500, p. 2804,) as amended by the Sixty-fourth General Assembly, the following property is declared to be exempt from taxation: "All property of every kind belonging to any municipal corporation created for the sole purpose of owning and operating a transportation system for public service." As we have held the Authority to be a municipal corporation, that statute is directly applicable, and we know of no constitutional prohibition against this provision of the act. The constitutional provision concerning the exemption of property is to be found in section 3 of article IX of that instrument, and is as follows: "The property of the state, counties and other municipal corporations" may be exempted from taxation. We have held the Authority is a municipal corporation, but the question is raised whether the Authority is to be included in the language just quoted, or must the term "other municipal corporations" be limited to cities, villages and incorporated towns, as contended?- This court has held that the exemption provisions of article IX of the constitution apply to sanitary districts, (*Sanitary Dist.* v. *Hanberg,* 226 Ill. 480); housing authorities, (*Krause* v. *Peoria Housing Authority,* 370 Ill. 356); and municipal water plants, (*City of Mattoon* v. *Graham,* 386 Ill. 180,) Cases in other jurisdictions, considering like constitutional provisions on like facts with the same holdings, are: *State* v. *McDavid,* 145 Fla. 605, 200 So. 100; *State* v. *Little River Drainage Dist.* 291 Mo. 72, 236 S. W. 315; *Bush Terminal Co.* v. *City of*

*New York,* 152 N. Y. Misc. 144, and others. We are of the opinion that the words "other municipal corporations" include such a municipal corporation as the Authority.

It is argued that the ordinance of the city of Chicago, passed to implement the purposes of the Transit Authority Act, is invalid for the reason that it grants to the Authority the right. to use city-owned subways, thus lending to the Authority the credit of the city, contrary to constitutional provisions. Counsel for appellees point out that section 23-28.1 of the Revised Cities and Villages Act expressly empowers the city to grant the Authority the right to use city-owned subways upon such terms and condition as the city may prescribe. The constitutional provision invoked is separate section 2, declaring that no "municipality shall ever * * * loan.its credit in aid of any "railroad or private corporation." The Authority is neither a railroad nor a private corporation. It is a municipal corporation and thus is not within the provisions of separate section 2. Separate section 2 does not apply to corporations which do not have capital stock or which are not organized for profit. *Furlong* v. *South Park Comrs,* 340 Ill. 363.

It is also urged against the provisions of the ordinance that it is invalid in that it grants exclusive rights and creates a monopoly beyond the powers to be exercised by the city of Chicago by ordinance. Under the pronouncements of this court .the city council has power to decide whether the operation of a street railway in the city shall be competitive or monopolistic. *Venner* v. *Chicago City Railway Co.* 258 Ill. 523; *Public Utilities Com.* v. *Romberg,* 275 Ill. 432.

It is also objected that since the ordinance was submitted to the voters at the same time and at the same election at which the Transit Authority Act was submitted, the ordinance is not valid. The Authority came into being by declarations of section 3 of the act declaring certain ter-

ritory to be "hereby created a political subdivision, body politic and municipal corporation under the name of Chicago Transit Authority." Under the amendment of the Revised Cities and Villages Act, section 23-28.1, which, by an emergency clause, also went into effect on April 12, 1945, the submission of both the ordinance and the act creating the Authority at the same election was provided for. The Authority was in existence from the time the act was approved, on April 12, 1945, since it carried an emergency clause. The adoption of the act by vote was made a prerequisite to the exercise of the powers conferred. Counsel for appellant argue, however, that the statement of an emergency was not sufficient to cause the Transit Authority Act to go into effect from and after the time of its passage. The emergency stated in the act, is as follows:

"Whereas, public utilities owning and operating the principal local transportation facilities in the metropolitan area of Cook County are unable to finance renewals, extension and improvements immediately necessary for adequate public service, and rehabilitation and modernization of such transportation facilities is possible through public ownership, and

"Whereas, a substantial amount of money can be saved for the taxpayers by submitting this Act for adoption at the judicial election to be held in Cook County on June 4, 1945,

"Therefore, an emergency exists and this Act shall become effective upon its passage." Laws of 1945, p. 1187.

It is not claimed that the act did not receive a two-thirds vote of the General Assembly but it is said that the statement in the emergency clause is not sufficient to constitute a statement of an emergency. They cite *Graham* v. *Dye*, 308 Ill. 283, and *People ex rel. Murray* v. *Holmes*, 341 Ill. 23. In those cases there was but the mere state-

ment that an emergency existed and that the act should go into effect from and after its passage. This was held not to comply with the provisions of the constitution requiring that the emergency clause state the emergency. In this case the emergency clause contains the statement that time and money would be saved by submitting the matter to a vote of the people at the June 4 election and that the transportation facilities were unable to finance renewals, extensions and improvements immediately necessary for adequate public service. We think this statement should be construed as a sufficient statement of an emergency. See *Furlong* v. *South Park Comrs.* 340 Ill. 363, where the emergency stated that there existed the necessity for immediate acquisition of parks and improvements contemplated in the act.

It is finally contended that the provisions of the act for the appointment of the members of the Transit Authority Board are in violation of the doctrine of separation of the powers of government provided in article III of our constitution, since three of the board are to be appointed by the Governor, to be approved by the mayor of the city of Chicago, and four by the mayor, to be approved by the Governor. This is provided in section 20 of the Transit Authority Act. It is argued that the General Assembly does not have power to subject the appointments of the Governor to the approval of the mayor. Section 10 of article V of the constitution provides that the Governor shall nominate and, by and with the advice and consent of the Senate, appoint all officers whose offices are established by the constitution or created by law and whose appointment or election is not otherwise provided for, and no such officer shall be appointed or elected by the General Assembly. The implication of this section is that, aside from constitutional officers, offices which are created by statute may be filled by such method of appointment as the

General Assembly may provide. In *Perkins* v. *Board of County Comrs.* 271 Ill. 449, it was held that in creating municipal corporations the General Assembly must provide the officers of such corporations and, in the matter of so creating the offices and providing for the manner in which they shall be filled, the legislative power is supreme. In *People ex rel. Greening* v. *Green,* 382 Ill. 577, the act creating the State Public Building Authority was under consideration. A provision in that act gave to the Supreme Court power to appoint one of the members of the commission. The objection was raised that the Supreme Court cannot appoint one of its members or some citizen as a member of the Authority because of articles of the constitution dividing the powers of government. It was held such objection was not serious, citing *People ex rel. Dunham* v. *Morgan,* 90 Ill. 558, *People* v. *Evans,* 247 Ill. 547, and *People ex rel. Lowe* v. *Marquette Nat. Fire Ins. Co.* 351 Ill. 516. Nor do we believe that the requirement of the mayor's approval of the Governor's appointments contravenes article III of the constitution. As we have seen, the method of appointment, other than of constitutional officers, is solely within the discretion of the legislative branch. See *People ex rel. Stead* v. *Board of Supervisors,* 223 Ill. 187, and *People ex rel. Gullett* v. *McCullough,* 254 Ill. 9.

Other objections are raised, but, as they are either not argued or we consider them answered by what has been said herein, we need not extend this opinion further to a consideration of them.

We are of the opinion that the Transit Authority Act is not subject to any of the constitutional objections raised, and the judgment and order of the circuit court, dismissing the information in *quo warranto,* and the information in equity, were right, and they are affirmed.

*Judgment and order affirmed.*