(No. 33318.—

THE PEOPLE *ex rel.* John Gutknecht, State's Attorney, Appellant, *vs.* CHICAGO REGIONAL PORT DISTRICT *et al.,* Appellees.

*Opinion filed November 18, 1954.*

JOHN GUTKNECHT, State's Attorney, of Chicago, (GOR-
DON NASH, JAMES C. MURRAY, and JOSEPH KERWIN, of
counsel,) for appellant.

WERNER W. SCHROEDER, and AMBROSE P. FINN, both
of Chicago, for appellees.

Mr. JUSTICE FULTON prepared the following opinion
prior to his resignation and it has been adopted and filed
as the opinion of the court:

This is an appeal from an order of the superior court
of Cook County and involves the validity of the Chicago
Regional Port District Act as passed by the 1951 General
Assembly and added to by the 1953 Assembly.

The State's Attorney of Cook County filed an informa-
tion in the nature of *quo warranto* on behalf of the People

challenging the constitutionality of the act entitled, "An Act to create a Chicago Regional Port District, and to define its powers and duties," (Ill. Rev. Stat. 1953, chap. 19, pars. 152 to 178 incl.) and the Lake Calumet Harbor Act. Ill. Rev. Stat. 1953, chap. 19, pars. 113 to 118 incl.

At the same time the State's Attorney in his official capacity, and as a citizen and taxpayer, filed a complaint in equity for an injunction to restrain the expenditures of appropriations, the issuance of bonds, the acceptance or attempting to obtain a lease of lands in the bed of Lake Calumet, and for general relief. The Chicago Regional Port District and the individual members of the Chicago Regional Port District Board were made defendants in both of said actions.

The appellees filed motions to strike the information and complaint. The two causes were consolidated for the purpose of hearing, and were submitted to the court on the above-mentioned pleadings. The court sustained the motions to strike, and, the appellant having elected to stand by the information and complaint, an order was entered dismissing both the information and complaint. This appeal was taken from that order.

The Chicago Regional Port District Act consists of 27 sections. Section 3 of said act is as follows: "There is created a political subdivision, body politic and municipal corporation by the name of the Chicago Regional Port District embracing all townships numbered 36 and 37 of the United States Government Survey, situated in Cook County, Illinois, and section 14 in township 37, range 11, of said government survey, situated in Du Page County, Illinois. The District may sue and be sued in its corporate name but execution shall not in any case issue against any property of the District. It may adopt a common seal and change the same at pleasure. The principal office of the District shall be in the city of Chicago."

Section 4 defines the duties of the Port District. These duties are, generally stated, to study existing harbor plans and recommend changes and improvements therein to meet changing business and commercial needs; to investigate and prepare plans for the development of the port facilities for said Port District; to study and make recommendations for the improvement of terminal and other facilities for the promotion of commerce; and to perform other acts to improve the port facilities in the handling of commerce in and through the Port District.

Section 5 defines the rights and powers of the District. The District has no power to incur any obligations for salaries and expenses until authorized by the General Assembly and appropriations are made therefor (section 6). It has power to acquire and accept by lease, gift or otherwise, any property and rights useful for its purpose and to aid in the development of adequate channels, ports, harbors or terminals or port facilities (section 7); to apply for and accept Federal grants, loans or appropriations (section 8); to procure and enter into insurance and indemnity contracts (section 9); to borrow money for port facilities, property and equipment, and to issue revenue bonds and certificates in payment of same (section 9.01).

The district has no power to levy taxes for any purpose (section 10). The act provides that it shall be unlawful to make any fill or deposit of rock, earth, sand or other materials, or build any wharf, pier, *etc.*, over, or within forty feet of any navigable waters within said Port District, without a permit therefor, and provides penalties for the violation of said provision (section 11). Provision is made for the appointment of a Port District Board, consisting of seven members, to serve without compensation (section 12.) Four of said Board members shall be appointed by the Governor by and with the advice and consent of the Senate, and the mayor of the city of Chi-

cago shall appoint three of said Board members, by and with the consent of the city council. Each appointment by the Governor shall be subject to approval by the mayor, and each appointment by the mayor shall be approved by the Governor (section 13).

All actions of the Board shall be by ordinance or resolution passed by the affirmative vote of at least four members. All such ordinances and resolutions, before taking effect shall be approved by the chairman of the Board, and if he shall approve thereof, he shall sign the same; and such as he shall refuse to approve, he shall return to the Board with his objections thereto in writing (section 16). The Board is given power to pass all ordinances and make all rules and regulations proper and necessary to carry into effect the powers granted with such fines or penalties as may be deemed proper (section 21).

The act providing for the construction of Lake Calumet Harbor was passed by the General Assembly and approved June 12, 1929. Said act provides that a harbor, having a basin and slips, a depth of not less than minus 21.34 feet, Chicago datum, and a total area of not less than 500 acres, may be constructed by the city of Chicago in and near Lake Calumet in the city of Chicago. By this act the city of Chicago is granted all the right, title and interest of the State of Illinois in the lands constituting the bed of Lake Calumet with certain exceptions therein stated.

Section 5 of the act authorizes the city of Chicago to sell and convey or lease for any term of years any of the lands granted by the State for industrial, manufacturing or harbor purposes, under certain conditions to be set forth in such deed or lease with reference to the use of such property, any such deed or lease to be approved by the Department of Public Works and Buildings.

The information and complaint filed herein raise numerous constitutional questions, which will be discussed and

disposed of in the order in which they are presented in the briefs of the respective parties.

It is first contended by appellant that both of the acts of the General Assembly above mentioned violate separate section 3 of the Illinois constitution of 1870. The pertinent portion of said section 3 is as follows: "The Illinois and Michigan Canal, or other canal or waterway owned by the State shall never be sold or leased until the specific proposition for the sale or lease thereof shall first have been submitted to a vote of the people of the State at a general election, and have been approved by a majority of all the votes polled at such election." Appellant concedes that this court has never passed directly on the question of the application of the provisions of separate section 3 of the constitution, in any case similar to the case at bar. In support of its position, appellant contends that the acts in unmistakable terms relinquish to the Port District and the city of Chicago any and all of the State's rights and interests over the bed of Lake Calumet and give the Port Board the power to acquire the other navigable waters of the State lying within the Port District area.

It is obvious that the purpose of the adoption of separate section 3 of the constitution was to prevent the passage of the control of this portion of the public waters of the State out of the control of the public authorities, or of one of its public agencies, to the end that the use of the public waters would be transferred to private interests in competition with the State or the public, and thus deprive the people of the use of the public waters as a means of transportation. If, therefore, the acts in question were passed with the intent and purpose on the part of the General Assembly of securing the development of harbor and terminal facilities of the public waters, for the use and benefit of the public, then it would seem apparent that these acts, instead of depriving the public of any right in

the public waters, as a matter of fact preserve and utilize them for the very purpose for which the constitutional provision was enacted and adopted.

Appellees argue that the Port District is a municipal corporation, created for the purpose of carrying into effect the power of the State in the improvement and development of a canal system so the same may be used to accommodate the public in the common use of the canal for trade and that the Port District being created "as a political subdivision, body politic and municipal corporation" is merely an alter-ego of the State. Its powers and duties are limited to the development and improvement of the harbor, port and terminal facilities in the District. There are no stockholders to share in any profits that may be derived from the operation of the facilities to be provided. It has no power to levy taxes. The revenue from the operations is to be used to defray the operating expenses and costs of improvements.

In *People* v. *Chicago Transit Authority,* 392 Ill. 77, this court, in an exhaustive review of the power of the General Assembly to create an agency with the power and authority to manage and operate a public utility in the public interest, said, at page 86: "The modern concept of public purpose is elastic and capable of expansion to meet changing conditions. The determination of what is for public good and what are public purposes are questions to be decided in the first instance by the General Assembly. In so doing that body is vested with a large discretion which the courts cannot control except where its action is evasive of or contrary to some prohibition of the constitution." Again on page 89 it is said, "The purpose of municipal corporations generally is to carry into effect some power which the State itself may, but cannot conveniently, exercise." Also see 37 Am. Jur. page 620, for a summarization of the relationship between the State and a municipal corporation.

The primary purpose of the Port District Act was the development of harbor and port facilities for the use of public transportation by water through the Lakes to the Gulf waterway. The State, through the General Assembly, had the power to create the Chicago Regional Port District as a municipal corporation for the purpose of developing and improving the public waters as an agency of the State, and the act creating such agency does not violate the provisions of the constitution, as contended by the appellant.

It is next contended by appellant that the Chicago Regional Port District Act is a special law and violates section 22 of article IV of the Illinois constitution.

The area embraced within the boundaries of the Port District lies south of the city of Chicago, extending from the Indiana State line across Cook County, and includes a section of land in Du Page County. The Calumet River connects with Lake Michigan and empties into Lake Calumet. The waters from these bodies of water connect with the Calumet Sag Channel, which in turn connects with the Sanitary District and Ship Canal, being the Lakes to the Gulf deep waterway. In 1946 Congress passed an act providing for the improvement of the Calumet Sag Channel of the Ship Canal, by widening the channel from 160 to 225 feet from the Sag Junction to Lockport, a distance of 10.4 miles, and also the widening of the Little Calumet River from 60 to 225 feet for a distance of 16 miles, and also increasing the depth for the accommodation of larger vessels than can now be used thereon. The proposed St. Lawrence Seaway recently provided for by treaty with Canada will increase the demand for adequate facilities for water transportation through the Lake Calumet outlet to the Ship Canal.

It was these considerations which undoubtedly caused the General Assembly to pass the Port District Act in preparation for the increased demands for the harbor and port facilities. The need for the development and improve-

ment of the facilities provided for extends far beyond the immediate locality, and certainly takes the act in question out of the realm of special or local legislation.

Many municipal corporations have been organized in this State by virtue of acts of the General Assembly for the purpose of carrying on certain public affairs. Some of these are the Sanitary District of Chicago, the Chicago Park District, and the Chicago Transit Authority. Each of the above-named agencies have been held not to come within the prohibition of the constitutional provision under consideration. In *People* v. *Chicago Transit Authority*, 392 Ill. 77, at page 86, this court said: "A large number of acts are to be found on the statute books of this State as indicating the breadth of the concept of a public purpose in legislation. They range all the way from poultry exhibits to public parks and hospitals. They are too numerous to cite specifically in this opinion. They all evidence the wide range and elastic character of the concept of a public purpose. To declare and provide for such purpose is pre-eminently the duty of the General Assembly. The operation of public utilities by cities has been recognized as a public purpose. The Cities and Villages Act contains comprehensive provisions for the operation of a variety of public utilities. These have been upheld as within the power of the General Assembly. *City of Mattoon* v. *Graham*, 386 Ill. 180; *Hairgrove* v. *City of Jacksonville*, 366 Ill. 163; *Springfield Gas and Electric Co.* v. *City of Springfield*, 292 Ill. 236, and other cases."

It is also well settled that the only municipal corporations which cannot be created by special law within the terms of said provision of the constitution are cities, towns and villages. (*Wilson* v. *Board of Trustees*, 133 Ill. 443; *Sanitary District* v. *Ray*, 199 Ill. 63; *Kocsis* v. *Chicago Park Dist.* 362 Ill. 24; *People* v. *Chicago Transit Authority*, 392 Ill. 77.) In *People ex rel. Greening* v. *Green*, 382 Ill. 577, it is held that the provision of said section in regard

to granting privileges and immunities applies only to private corporations and not to public corporations. On the basis of these decisions the Chicago Regional Port District Act does not come within the prohibition of section 22 of article IV of the constitution.

It is next contended by appellant that the powers conferred by section 5 are not public purposes. This matter has been previously discussed. The only powers conferred are for the development and improvement of the public waters of the State, so that they can be used for public transportation. This court has had occasion to consider this question in at least two recent cases, namely, *People* v. *Chicago Transit Authority,* 392 Ill. 77, and *People ex rel. Curren* v. *Wood,* 391 Ill. 237. The latter case involved the Airport Authorities Act of 1945, and the same objection was urged against that act as is now urged against the Port District Act. On page 244 of the opinion in that case, this court said, "The power to operate an airport is vested in the airport authority on the theory that such operation is necessary for public safety in aviation. There is in principle no essential difference, so far as the public interest and the public safety are concerned, between the operation of a public airport and that of a highway, subway, wharf, public park, and the like. Such airports have been characterized as the 'highways of the air.' The fact that private airports may and do exist does not prevent operation and supervision of a public airport, any more than the ownership and operation of a private road prevents operation, supervision and control of the public highways of the State."

The Chicago Transit Authority case announces the same doctrine. While this court has never had occasion to apply the above-announced doctrine to port authorities, the powers and duties of such an authority under the provisions of the act under consideration are analogous to those in the cases above referred to and the principles upon which those

cases were decided apply with equal force to the situation presented in the instant case.

In several other States the courts have held that port authorities, having powers and duties comparable to those of the Chicago Regional Port District, have been held to be public, and not private, corporations. Among the cases where this question has been considered and determined are the following: *Cook* v. *Port of Portland,* 20 Ore. 580, 27 Pac. 263, 13 L.R.A. 533; *Paine* v. *Port of Seattle,* 70 Wash. 294, 126 Pac. 628; *Bush Terminal Co.* v. *New York,* 282 N.Y. 306. In each of the above cases the port authority was given power to construct and operate terminal and transportation facilities, and was held to be a municipal corporation, notwithstanding the fact that it exercised a proprietary authority in the operation of the port facilities.

The Chicago Regional Port District was created by the act in question as a municipal corporation for a public purpose, and the act under consideration does not violate section 1 of article X, section 14 of article II, nor section 22 of article IV of the Illinois constitution, as contended for by appellant. The cases cited by appellant in support of his position are not applicable.

It is next argued by appellant that the Chicago Regional Port District is not a municipal corporation and is not entitled to the rights and privileges of a municipal corporation. It is urged that the District has none of the aspects of a municipal corporation, has no power to levy and collect taxes, is not under State control or management and that the entire supervision and control is entrusted to private individuals. These objections are not well taken. The case cited in support thereof (*Washingtonian Home* v. *City of Chicago,* 157 Ill. 414,) is not applicable; the corporation involved in that case was a private corporation.

The power to tax is not essential to a municipal corporation. (*People* v. *Chicago Transit Authority,* 392 Ill.

77.) The Board members of the District like those of the Chicago Transit Board are appointed by the State and city authorities, and are subject to their control. If they fail to perform their duties, they can be removed. The matters raised in these objections have been previously considered and determined in this opinion.

It is further argued by appellant that the act in question authorizes the use of navigable waters of the State for nonpublic purposes, in violation of section 22 of article IV of the constitution. The purpose of the act is the development and improvement of the public waters so that they can be used for navigation by the public in conjunction with and as a part of the Lakes to the Gulf Waterway, and the St. Lawrence Seaway. This is purely a public and not a private purpose. The riparian rights of the property owners owning property adjacent to the waters in question are not involved in this proceeding. If any such rights are invaded by any of the uses or operations of the Port District, the property owners have their remedy for any damages sustained. The objections of appellant under this division of his brief cannot be sustained.

The further objection to the act in question is made by appellant that said act creates a monopoly in violation of section 14 of article II, and section 22 of article IV of the constitution. If under the provisions of the Port District Act, the Port District is a municipal corporation, this objection cannot be sustained. The powers conferred on every municipal corporation are monopolistic, in the sense that they have exclusive authority in the territory over which they have control. This is necessarily so, as otherwise they could not discharge their governmental functions. Each political subdivision from the State down to the smallest political unit has exclusive jurisdiction to operate within the powers conferred in its respective field of operations. In the exercise of their respective powers they are necessarily monopolistic within the area in which they are

authorized to exercise governmental control and authority. If the position of appellant is sound, then every municipality created by legislative act, such as the Sanitary District, the Park District, the Transit Authority, and others now in operation, would be subject to the same objection.

The grant by a city of certain streets to a street railway company for transportation purposes, to the exclusion of other competing railroads, has been repeatedly held by this court not to be subject to the objection that it is in violation of the constitution prohibiting monopolities. This proposition has been before the courts in this State in many cases involving the validity of legislative acts granting rights to various types of corporations, both public and private. In the case of *People* v. *City of Chicago,* 349 Ill. 304, the court had under consideration the validity of an ordinance providing for a comprehensive unified traction system, called the "Comprehensive Traction Ordinance," enacted pursuant to an act of the legislature adopted in 1929. Among the many objections to the validity of the ordinance and the law pursuant to which it was enacted was that the ordinance created a monopoly, in that it granted the exclusive right to use the streets for the operation of a street railway system. In passing on that question, the court on page 326 of the opinion said, "Even a municipal grant of street rights would not create a monopoly unless it was exclusive in character, and the statute would not be rendered invalid by reason of a subsequent grant by a municipal corporation of exclusive street rights to a corporation organized under the act. But in any event, even if the act of 1929 could be said to foster a monopoly in one company doing a local transportation business in a given metropolitan area, it would not necessarily be invalid. While the public policy of this State formerly encouraged competition among public utility companies and forbade monopolies, it is now recognized by the State that under proper regulations a monopoly in this field is prefer-

able to unrestricted competition, and an act which permits such a monopoly is free from constitutional objections. (*Public Utilities Com.* v. *Romberg,* 275 Ill. 432.)" The contention of appellant that the Port District Act creates a monopoly cannot be sustained.

It is next contended that section 9.01 of the Port District Act authorizes the District to issue bonds without providing for a tax to pay for same, in violation of section 10 and section 12 of article IX of the constitution. Section 12 of article IX of the constitution limits the power of a municipal corporation to incur indebtedness to five per cent of the assessed valuation of the property in the municipality. The above provision of the Port District Act is almost identical with a similar provision of the Metropolitan Transit Authority Act, the validity of which was passed on by this court in the case of *People* v. *Chicago Transit Authority,* 392 Ill. 77. At page 93 of the opinion the court said, "It is also objected that the act is invalid in that it permits the creation of an indebtedness within the meaning of section 12 of article IX of the constitution. Section 12 of this act provides that the bonds and other evidences of indebtedness shall be paid solely from the revenues or income derived from the system. Any trust agreement entered into covering the issuance of bonds or certificates shall have the same provision. It is provided that the bonds shall not become the indebtedness or obligation of the State or any political subdivision or municipality within the State, and shall not become an indebtedness of the Authority. To constitute a debt against a municipality there must be an obligation which the municipality must, if need be, meet with its funds or property. But if the obligation is to be paid solely from the income derived from the property purchased with the bonds or their proceeds, no indebtedness is incurred. *Hairgrove* v. *City of Jacksonville,* 366 Ill. 163; *City of Edwardsville* v. *Jenkins,* 376 Ill. 327.) This contention cannot be sustained."

The same doctrine is announced in *Loomis* v. *Keehn,* 400 Ill. 337.

Also in *People* v. *Illinois State Toll Highway Com.* 3 Ill. 2d 218, decided by this court at the May Term, 1954, at page 228 it is said, "All indebtedness incurred by the commission and all legal obligations assumed by it are payable only out of such revenues as are described in section 20 of the act. This modern method of financing is founded basically upon the proposition that the State assumes no obligation and the holder of the bond is duly notified of this fact by the express language of the statute and the form of the bond issued. It is this well known method of modern financing that has proved itself to be of much help and beneficence in public works."

Under the provisions of section 9.01 of the Port District Act the revenue bonds and certificates authorized to be issued are payable solely out of the revenues derived from the operation of Port District facilities. In view of the recent decisions of this court above cited, the objection of appellant is without merit.

Appellant also contends that section 23 of the Regional Port District Act, providing for special procedure in actions for personal injuries, violates section 22 of article IV of the constitution, in that it requires a special notice to the District. The case of *Otis Elevator Co.* v. *Industrial Com.* 302 Ill. 90, cited by appellant, is not in point. This court has upheld the validity of similar provisions with reference to claims for personal injuries against municipal corporations. The doctrine is so well established in this State that extensive citation of authorities is unnecessary. Among the more recent cases in which this procedure has been approved are *Condon* v. *City of Chicago,* 249 Ill. 596, and *Schuman* v. *Chicago Transit Authority,* 407 Ill. 313.

Appellant also contends that section 11 attempts to amend certain other acts in violation of section 13 of article IV of the constitution. Section 11 of the Port Dis-

trict Act provides that no fill or other structure shall be made in any of the navigable waters within the District without a permit from the District. This section does not attempt to amend any other act, but simply provides that a permit from the District shall be secured for any fill or other structure in the waters, in addition to other permits heretofore required.

It is also contended that section 27 of the Port District Act attempts to amend certain other acts, in violation of said constitutional provisions. An identical provision was considered and upheld in *People* v. *Chicago Transit Authority,* 392 Ill. 77, and also in *People* v. *Wood,* 391 Ill. 237, where the court said at page 256, "It is further claimed that this act violates section 13 of article IV in that certain provisions amend other acts and also are not embraced in the title of the act. This position is untenable. The act is single and complete in itself. The rule established in this State is that where an act is complete in itself, without reference to a general act, it does not contravene section 13 of article IV merely because it repeals, modifies or amends by implication the general act. *St. Louis Bridge Co.* v. *Becker,* 372 Ill. 102; *Hollingsworth* v. *Chicago and Carterville Coal Co.* 243 Ill. 98."

The Port District Act is complete in itself, and even though it may incidentally change or modify certain other provisions of the statute, it is not subject to the objection that it violates the constitutional provisions mentioned. It is only when the later act makes changes in the prior acts, substituting provisions, adding new ones and mingling the new with the old, that this objection is valid.

It is next contended by appellant that the provision of the Port District Act authorizing the mayor of Chicago to approve the appointments by the Governer of members of the Board, infringes upon the governmental powers conferred by the constitution on the Governor. This court considered and upheld a similar provision in the *Chicago*

*Transit Authority case.* In passing on that question it was said, at page 98, "In *Perkins* v. *Board of County Comrs.,* 271 Ill. 449, it was held that in creating municipal corporations the General Assembly must provide the officers of such corporations and, in the matter of so creating the offices and providing for the manner in which they shall be filled, the legislative power is supreme. In *People ex rel. Greening* v. *Green,* 382 Ill. 577, the act creating the State Public Building Authority was under consideration. A provision in that act gave to the Supreme Court power to appoint one of the members of the commission. The objection was raised that the Supreme Court cannot appoint one of its members or some citizen as a member of the Authority because of articles of the constitution dividing the powers of government. It was held such objection was not serious, citing *People ex rel. Dunham* v. *Morgan,* 90 Ill. 558, *People* v. *Evans,* 247 Ill. 547, and *People ex rel. Lowe* v. *Marquette Nat. Fire Ins. Co.* 351 Ill. 516. Nor do we believe that the requirement of the mayor's approval of the Governor's appointments contravenes article III of the constitution. As we have seen, the method of appointment, other than of constitutional officers, is solely within the discretion of the legislative branch. See *People ex rel. Stead* v. *Board of Supervisors,* 223 Ill. 187, and *People ex rel. Gullett* v. *Mc-Cullough,* 254 Ill. 9."

The suggestion that the act in question extends the appointing power of the mayor beyond the Chicago city limits was likewise held without merit in the *Chicago Transit Authority case.*

Appellant further contends that section 21 of the Port District Act is an unlawful delegation of legislative power in violation of article III and section 1 of article IV of the constitution. It is claimed that the Board is authorized to pass ordinances and regulations to execute the powers granted and to impose fines and penalties without limita-

tion. If the General Assembly has the power to create municipal corporations, it certainly has the power to grant unto such bodies such power as may be necessary to enable the municipalities to accomplish the purposes for which they are created.

This court has sustained similar provisions, and again in *People* v. *Chicago Transit Authority,* 392 Ill. 77, on page 90, it was stated, "Nor can it be said that the Authority is not vested with governmental powers. By section 28 of the act, the board shall establish and maintain a system of civil service and a retirement system. By section 30 it is to fix rates, fares and charges for transportation. By section 23 all its ordinances, proceedings and documents are declared to be public records. These and other provisions of like nature show that certain governmental powers are vested in the Authority. As already indicated, many of the objections raised to the act are based on the contention that the Authority is not and cannot be a municipal corporation. Since we hold a contrary view, it will be unnecessary to consider questions based upon the hypothesis that the Authority is not a municipal corporation."

Also in *People ex rel. Chicago Dryer Co.* v. *City of Chicago,* 413 Ill. 315, at page 320 the court said, "Still another recognized principle is, that while the legislature may not delegate its general legislative authority to decide what the law shall be, it may authorize others to do many things which it might properly but cannot understandingly or advantageously do itself. (*Owens* v. *Green,* 400 Ill. 380; *People ex rel. Thomson* v. *Barnett,* 344 Ill. 62.) Falling within the latter principle is the established view that it is not regarded that the rule against delegation of legislative power is violated by vesting municipal corporations with certain powers of legislation on subjects of purely local concern connected with their municipal affairs."

The cases cited by appellant in support of his position are not in point. We hold that section 21 of the Port District Act is not an illegal delegation of legislative powers.

Appellant contends that section 26 of the Port District Act violates section 13 of article IV of the constitution, in that it attempts to amend the Public Utilities Act. This contention has been already passed on, in consideration of other objections. Contrary to the claims of appellant, section 26 specifically provides that nothing in this act impairs the powers or jurisdiction of the Illinois Commerce Commission in that the Port District shall do nothing to restrict, limit or interfere with the operation of a common carrier or other public utility, without approval of the Illinois Commerce Commission and without payment of just compensation. These provisions certainly could not be considered an attempt to amend the Public Utilities Act.

Finally it is urged by appellant that the appropriation of $100,000 made to the Chicago Regional Port District violates section 20 of article IV and separate section 3 of the constitution. The objection is that the appropriation is made to a private corporation, which is forbidden. The case of *Schuler* v. *Board of Education,* 370 Ill. 107, is cited in support of this objection. As the Port District is a municipal corporation, the case cited is not in point.

The General Assembly has the power to make appropriations for the care, maintenance and improvement of the property of the State. The public waters of the State are a part of the public domain. Similar appropriations to public agencies have been upheld in the cases of *People ex rel. Greening* v. *Green,* 382 Ill. 577, *People* v. *Chicago Transit Authority,* 392 Ill. 77; *People* v. *Illinois State Toll Highway Com.* 3 Ill. 2d 218, and *Loomis* v. *Keehn,* 400 Ill. 337. That the General Assembly could have made this appropriation for making specific improvements in the waters within the area of the Port District, in order to make the same more adaptable to the demands or needs of trade and com-

383

merce, cannot be denied. If the General Assembly could lawfully make a direct appropriation for the purpose indicated, there is no sound reason why this same purpose could not be accomplished by delegating the power to make the improvements to the Port District as the agent of the State and to make the necessary appropriation therefor.

We have considered and disposed of all objections of appellant, and are of the opinion that the Chicago Regional Port District Act is a valid exercise of legislative power by the General Assembly, that the provisions of said act are not subject to the constitutional objections raised, and that the order of the superior court dismissing the information in *quo warranto* and the complaint in equity was right, and it is, therefore, affirmed.

*Order affirmed.*