(No. 34783.—

THE PEOPLE *ex rel.* Benjamin S. Adamowski, State's Attorney, Appellant, *vs.* CHICAGO RAILROAD TERMINAL AUTHORITY *et al.,* Appellees.

*Opinion filed June 20, 1958.*

232

BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRANCIS X. RILEY, and ROBERT W. SCHERMAN, of counsel,) for appellant.

WILLIAM H. DILLON, of Chicago, (THOMAS E. DILLON, of counsel,) for certain appellees, and JOHN C. MELANIPHY,

Corporation Counsel, of Chicago, for intervenor City of Chicago, and FRANKLIN C. GAGEN, SAMUEL KASSEL, MARVIN A. JERSILD, ROBERT MITTEN, EATON ADAMS, NOAH WALKER, MAURICE A. GARVEY, all of Chicago, JOHN L. DAVIDSON, of St. Louis, Missouri, and JAMES M. WINNING, of Springfield, for intervening railroads.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This is a *quo warranto* action which challenges the validity of the Railroad Terminal Authority Act adopted in 1957. (Ill. Rev. Stat. 1957, chap. 114, pars. 361-389.) The defendants are the Chicago Railroad Terminal Authority and the seven members of its Board of Commissioners. The city of Chicago and 14 railroad companies were granted permission to intervene. The case was heard on the pleadings. The court found the statute valid, sustained the defendants' motion to dismiss the complaint, and dismissed the case. Plaintiff appeals.

Section 2 of the Railroad Terminal Authority Act is a declaration of public purpose. It states that there exist in cities in Illinois having a population of 500,000 or more, railroad terminal areas which contribute to the growth of blight in adjacent and surrounding areas; prevent the restoration and proper development of such areas necessary to promote the safety, health, welfare, comfort and convenience of its inhabitants; depress land values in surrounding areas; unnecessarily isolate areas of unused land, rendering it unavailable for any other use; obstruct the continuity of public roads and streets; create traffic congestion upon public roads and streets; cause undue delay and expense in the transportation of persons and property; and retard the proper economic and civic growth and development of the city; "that in order to eradicate the undesirable conditions herein found to exist in such Railroad Terminal Areas, and thereby encourage the efficient and

economic development of adjacent and surrounding areas and provide efficient and convenient terminal facilities in connection with the transportation of persons and property, it is hereby found and declared to be necessary and desirable to make possible the relocation of railroad freight facilities to outlying areas, the consolidation of railroad terminals and terminal facilities and the proper civic, manufacturing, commercial, business and residential development of the acreage to be so released; and that the eradication and elimination of these conditions and the acquisition, consolidation and redevelopment of land thereby released in the manner provided in this Act is hereby declared to be a public use essential to the public interest."

Briefly summarized, the act provides that any city, having a population of 500,000 or more, by resolution of the city council may create a Railroad Terminal Authority and that the government, control and management of the Authority shall be vested in a Board of Commissioners. (Secs. 4 to 11.) An Authority shall be a municipal corporation and shall constitute a body politic having public and governmental powers enumerated in the act. (Sec. 14.) An Authority may determine that a particular area within the city is a railroad terminal area within the definition set forth in section 3(d) of the act. The determination must be approved by the city council of the city before it becomes effective. (Sec. 15.) Upon the making of such a determination and the approval thereof the Authority is authorized to acquire by gift, purchase or eminent domain the property located within the boundaries of such area. (Secs. 14(a) and 16.) Upon acquisition the Authority is authorized to remove the existing terminals, terminal facilities, freight facilities and other buildings and structures located within the area and install and construct streets, utilities and site improvements; construct and operate a new consolidated railroad terminal, terminal facilities and approaches thereto; enter into leases and contracts with railroad com-

panies for use by said railroad companies of such terminal and terminal facilities; enter into contracts and leases for the operation of restaurants, stores or other enterprises commonly found in a terminal station; make provision for off-street parking; convey real property in the area not required for the construction and operation of the new terminal approaches thereto to public bodies for streets, alleys, schools, parks and playgrounds and for other public purposes and to convey any land not needed for the foregoing purposes to private individuals and corporations for redevelopment by private enterprise in accordance with a redevelopment plan to be approved by the Authority and the city council of the city. (Secs. 14(a) to 14(n), 17, 18, and 19.) An Authority is further authorized to issue and sell revenue bonds to provide funds for the acquisition of the area, the demolition and removal of buildings and for constructing the new terminal station and the approaches thereto. Secs. 14(o) and 20.

Although plaintiff challenges the constitutionality of the act upon many grounds, a basic theme underlying several specific contentions is that the principal beneficiaries of the act are private corporations and that "The entire operation of this Act is designed to grant to these private corporations powers which may be exercised by municipal corporations only, and to finance them from public sources of revenue."

To the extent that plaintiff's contentions are directed to an alleged absence of public use and public purpose, they are without merit. The General Assembly has described in considerable detail the conditions which the act is designed to eliminate and has declared the public use and public interest that it found to exist. Such a legislative declaration is not to be lightly set aside. (*Berman* v. *Parker*, 348 U.S. 26, 99 L. ed. 27; *People ex rel. Gutknecht* v. *City of Chicago*, 3 Ill.2d 539; *Cremer* v. *Peoria Housing Authority*, 399 Ill. 579; *Zurn* v. *City of Chicago*, 389 Ill. 114;

*Hagler* v. *Small,* 307 Ill. 460.) "Public purpose" is not a static concept. It is flexible, and is capable of expansion to meet conditions of a complex society that were not within the contemplation of the framers of our constitution. *People ex rel. Gutknecht* v. *Chicago Regional Port District,* 4 Ill.2d 363; *Grasse* v. *Dealer's Transport Co.* 412 Ill. 179; *People* v. *Chicago Transit Authority,* 392 Ill. 77; *People ex rel. Greening* v. *Bartholf,* 388 Ill. 445.

The primary objects of the statute are the removal of the blighted conditions caused by antiquated terminal areas, the promotion of the growth and development of the city, and the relief of traffic congestion by extending streets through the areas and by furnishing off-street parking. Contentions that similar statutes did not serve a public use and a public purpose have been rejected. (*People ex rel. Gutknecht* v. *Chicago Regional Port District,* 4 Ill.2d 363 (Chicago Regional Port District Act); *People ex rel. Gutknecht* v. *City of Chicago,* 3 Ill.2d 539 (Urban Community Conservation Act); *Chicago Land Clearance Com.* v. *White,* 411 Ill. 310, and *People ex rel. Touhy* v. *City of Chicago,* 399 Ill. 551 (Blighted Areas Redevelopment Act of 1947); *People ex rel. Curren* v. *Wood,* 391 Ill. 237 (Airport Authorities Act of 1945).) It may be that private railroad corporations will derive some benefit under the act. Those benefits, however, will be incidental to the principal purpose of the statute, as were the collateral benefits in the cited cases. The only portion of the area in which the railroad companies will have any direct interest will be the portion occupied by the new consolidated station and its approaches. The Authority will own and operate the facilities; the railroad companies will be its lessees. These circumstances neither neutralize nor destroy the public purpose and public use that the General Assembly has found to exist.

Another recurrent contention is that a Railroad Terminal Authority is not a municipal corporation because (1)

it possesses no real powers and (2) the incorporated area is so poorly defined as to be nonexistent. Section 14 specifically declares that an Authority shall be a municipal corporation. The General Assembly may create whatever kind of municipal corporation it deems wise for the efficient administration of public affairs, and may give it such powers and functions it deems appropriate. (*Kocsis* v. *Chicago Park District*, 362 Ill. 24; *Perkins* v. *Cook County Comrs.* 271 Ill. 449.) A municipal corporation may be created for a single purpose if that purpose is a public one. *People ex rel. Adamowski* v. *Public Building Commission of Chicago*, 11 Ill.2d 125; *People ex rel. Coutrakon* v. *Lohr*, 9 Ill.2d 539; *People ex rel. Gutknecht* v. *Chicago Regional Port District*, 4 Ill.2d 363; *People* v. *Chicago Transit Authority*, 392 Ill. 77; *People ex rel. Curren* v. *Wood*, 391 Ill. 237.

Plaintiff contends that while section 11 of the act makes the treasurer of an Authority the custodian of its funds, and provides for their deposit, it gives him no power to withdraw the funds once deposited, thereby rendering the Authority impotent. Even if there were no other provisions of the act giving the treasurer power to withdraw funds to meet the Authority's obligations, that power would clearly be implied as necessarily incident to the powers expressly granted. (*Pure Oil Co.* v. *City of Northlake*, 10 Ill.2d 241.) We find, however, that the power to withdraw funds is clearly contemplated by sections 8, 10 and 14 of the act.

Plaintiff also contends that the power of the Authority to acquire real property for the purposes of the act is so restricted as to be illusory. It is pointed out that sections 14(f) and 16 require, as a condition precedent to the exercise of the power of eminent domain, that the Authority obtain the agreement of three fourths of the railroad companies owning and three fourths of the companies operating or using railroad terminals within a railroad terminal area to occupy and use the new railroad terminal. The act also requires the approval of the Illinois Commerce Commission

before property belonging to a corporation subject to the jurisdiction of the Commission may be acquired. The operation of a law may depend upon the happening of a contingency or future event. (*City of Chicago* v. *Central Nat. Bank*, 5 Ill.2d 164; *Zisook* v. *Maryland-Drexel Neighborhood Development Corp.* 3 Ill.2d 570; *People ex rel. Grinnell* v. *Hoffman*, 116 Ill. 587; *Home Ins. Co.* v. *Swigert*, 104 Ill. 653.) Provisions which are designed, as are these, to assure the successful implementation of the legislative plan can not fairly be described as grants of illusory powers.

Plaintiff contends further that because of the restrictions imposed upon its power to acquire property, an Authority may never acquire "a square inch of real property," thereby failing to meet an essential characteristic of a municipal corporation, namely, the "indispensable element" of territory. (*People ex rel. Quisenberry* v. *Ellis*, 253 Ill. 369.) Section 14(a) grants to an Authority the power to acquire any area or areas lying wholly within the territorial limits of the city in which it is organized and which the Board of Commissioners shall determine to be railroad terminal areas. A railroad terminal area is defined in section 3(d) as any area or areas within the territorial limits of a city which, by reason of location and use of railroad terminals, terminal facilities and freight facilities, widespread areas of trackage, and deleterious or obsolete land use, or any combination of these factors, contributes to the growth of blight in surrounding areas and the other conditions described in section 2. Thus, the Authority's potential jurisdiction is confined to the territorial limits of the city in which it is organized and its actual jurisdiction is limited to railroad terminal areas, as defined in section 3(d).

Corresponding provisions have been sustained. (*People ex rel. Adamowski* v. *Public Building Commission of Chicago*, 11 Ill.2d 125; *People ex rel. Touhy* v. *City of Chicago*, 399 Ill. 551.) In *People ex rel. Honefenger* v. *Burris*, 408 Ill. 68, the legal existence of the Taylorville Pleasure

Driveway and Park District was challenged. This court said: "The district is a municipal corporation * * *. * * * It is within the power of the legislature to settle * * * the means whereby it shall be determined what, and how much, territory the delegated power shall cover. [Citations.] * * * The legislature, in delegating the power to form park districts like the one under consideration, set up limitations to govern those entrusted with the power to settle the questions of what, and how much, territory should be incorporated into a proposed district." See: *People ex rel. Royal* v. *Cain,* 410 Ill. 39.

Section 14(e) provides that any lease or contract entered into by a Railroad Terminal Authority with a railroad "may vest in a committee * * * composed of representatives of any and all interested parties including but not limited to representatives of any railroad company or companies affected hereunder, such powers as may be specified in such contract or lease for supervising and controlling the construction, reconstruction, improvement, maintenance, management and operation of" a terminal and its facilities. Plaintiff contends that this provision violates article III and section 1 of article IV of our constitution by empowering the Board of Commissioners to abdicate the Authority's public function to interested railroad representatives. But when the entire section 14(e) is read, it clearly reserves the ultimate responsibility of control and management to the Board of Commissioners of the Authority. It provides: "Said terminal, Terminal Facilities and the approaches thereto shall be under the control and management of the Railroad Terminal Authority * * *." The ultimate determinations will be those of the Authority. Section 14(c) grants an Authority itself the power to construct, operate and maintain a terminal. Section 14(d) grants an Authority the power to enter into contracts for the operation, maintenance and management of such terminal. Section 14(e) provides that the Au-

thority may, if it sees fit, and to the extent that it sees fit, avail itself of the services of those who are presumably most familiar with the problems involved. To this extent it contemplates the delegation of administrative duties, but in this we see no constitutional violation. (*People* v. *Illinois Toll Highway Com.* 3 Ill.2d 218; *People ex rel. Curren* v. *Schommer,* 392 Ill. 17; *Department of Public Works and Buildings* v. *Lanter,* 413 Ill. 581; *Mitchell* v. *Lowden,* 288 Ill. 327.) If this sensible and apparently harmless provision should be abused, a question not now presented would arise.

The last sentence of section 20 provides that "the Board of Commissioners shall not have the duty or be empowered to make any change in any lease or contract entered into with any railroad company without the prior written consent of that railroad company." Plaintiff contends that this sentence is an illegal delegation of legislative power. This provision appears to state only what would be the law in its absence. It is suggested that it is designed to ensure stability to the long-term leases which the act seems to contemplate, in order to assist in the resolution of problems that might arise under sections 1(18) and 5(2) of the Interstate Commerce Act. (49 U.S.C.A., secs. 1(18) and 5(2).) However that may be, there is no doubt that the General Assembly may grant to a municipal corporation the power to enter into contracts or leases for the use of its property. *Poole* v. *City of Kankakee,* 406 Ill. 521; *People* v. *City of Chicago,* 349 Ill. 304; *Barsaloux* v. *City of Chicago,* 245 Ill. 598.

Plaintiff insists that sections 12 and 13 violate separate section 2 of our constitution which provides that no city shall make a donation or loan its credit in aid of a railroad or private corporation. Section 12 provides that, in order to aid and co-operate with an Authority, the city in which it is organized may assign or loan its employees to the Authority to aid in the performance of any of its work,

and that the city may also provide necessary office space, equipment or other facilities to the Authority. Section 12 also provides that the city may make available to the Authority the services of its engineering staff and facilities. Section 13 provides that the city creating an authority may make donations of real or personal property, or cash grants to the Authority in such amounts as it may deem appropriate.

Plaintiff admits that these sections would not offend any constitutional restrictions if the recipient was a "genuine municipal corporation." But plaintiff argues that these sections contemplate donations to railroad companies. This argument is adequately answered in *People* v. *City of Chicago,* 349 Ill. 304, 334: "The mere fact that the city is to build the subways at its own cost or by special assessment and is authorized to permit them to be used by local transportation companies does not in any way violate the constitutional provision referred to. The city is to permit such use 'upon such terms and conditions as the city council of the city by ordinance shall prescribe.' Whether or not such an ordinance, when passed, constitutes a donation or lending of its credit by the city is a question which has no bearing upon the validity of the act." An Authority is neither a railroad nor a private corporation. It is a municipal corporation, and "Separate section 2 does not apply to corporations which do not have capital stock or which are not organized for profit." *People* v. *Chicago Transit Authority,* 392 Ill. 77, 95; *People ex rel. Adamowski* v. *Public Building Commission of Chicago,* 11 Ill.2d 125; *Cremer* v. *Peoria Housing Authority,* 399 Ill. 579; *Furlong* v. *South Park Comrs.* 340 Ill. 363.

Plaintiff attacks section 16 which authorizes the Authority to acquire the fee simple title to real property within a railroad terminal area by eminent domain. Some of the land so acquired will be used for railroad tracks, and plaintiff maintains that this provision violates the last sentence

of section 13 of article II of the constitution of Illinois: "The fee of land taken for railroad tracks, without consent of the owners thereof, shall remain in such owners, subject to the use for which it is taken." We think that the fact that a railroad company may acquire only an easement in land condemned for railroad tracks does not preclude a municipal corporation from acquiring the fee simple title in land for the public purpose set forth in section 2. There is no limit on the extent of the interest in land that may be taken by the State or its municipalities. (*Sanitary District of Chicago* v. *Manasse,* 380 Ill. 27.) The central purpose of this act is the eradication of the blight which exists in railroad terminal areas. What is involved is not just the acquisition of land by railroad companies for railroad tracks, which is what the constitutional provision contemplates. In our opinion the incidental, though necessary, use of some of the land for tracks is not a bar to the exercise of the power of eminent domain by a municipal corporation to accomplish the larger public purpose envisioned by the General Assembly in this act.

Contrary to plaintiff's contention, we find that the classification provisions of the act are reasonable and do not violate section 22 of article IV of our constitution. (See: *People ex rel. Coutrakon* v. *Lohr,* 9 Ill.2d 539; *Kocsis* v. *Chicago Park District,* 362 Ill. 24.) Plaintiff also contends that section 26, which provides that all property of a Railroad Terminal Authority shall be exempt from taxation, operates to exempt property owned by railroad corporations. The statute does not so provide. Section 19 of the Revenue Act was amended when the Railroad Terminal Authority Act was adopted. It now provides: "All property of any municipal corporation created for the purpose of providing railroad terminals, railroad terminal facilities and the approaches thereto, including, but without in any way limiting the generality of the foregoing, any Railroad Terminal Authority created pursuant to the Railroad Terminal Au-

thority Act enacted by the 70th General Assembly" shall be exempt from taxation. (Ill. Rev. Stat. 1957, chap. 120, par. 500.) The Authority is a municipal corporation created for a public purpose and section 19(17) of the Revenue Act has granted tax exemption to railroad terminal authorities by general law. Like exemptions granted in precisely the same manner to other municipal corporations have been approved. *People ex rel. Adamowski* v. *Public Building Commission of Chicago,* 11 Ill.2d 125; *People* v. *Chicago Transit Authority,* 392 Ill. 77; *Krause* v. *Peoria Housing Authority,* 370 Ill. 356.

Plaintiff has stated but not argued many other constitutional questions. They are deemed waived, and do not require consideration.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*